JUDY NELSON, Appellant, v. SCOTT HEER, Respondent.

No. 45571

July 26, 2007                                    163 P.3d 420

[Rehearing denied October 2, 2007]

*Robert W. Lueck*, Las Vegas, for Appellant.

*Sylvester & Polednak, Ltd.*, and *Shawn A. Mangano*, Las Vegas, for Respondent.

Before PARRAGUIRRE, HARDESTY and SAITTA, JJ.

# OPINION

By the Court, HARDESTY, J.:

In this appeal, we interpret the statutory provisions that require a seller of residential property to disclose any defects to a buyer of that property. Respondent Scott Heer contended that appellant Judy Nelson sold him a cabin without complying with NRS 113.130 because she failed to disclose prior water damage that may have caused elevated amounts of mold within the cabin. Under

NRS 113.140, however, a seller of residential property is required to disclose to potential buyers only those defects of which the seller is aware. NRS 113.100(1) defines "defect" as "a condition that materially affects the value or use of residential property in an adverse manner." Because Nelson had the prior water damage repaired and she was not aware of the presence of any elevated amounts of mold, we conclude that Nelson did not have a duty under NRS Chapter 113 to disclose the prior water damage or the possible presence of mold.

## PROCEDURAL HISTORY AND FACTS

In 1990, Nelson purchased a cabin in Mt. Charleston, Nevada. Eight years later, a water pipe on the third floor burst, flooding the cabin. After a passerby noticed water flowing from the cabin, Nelson was quickly notified of the problem.

Nelson promptly had the water turned off and reported the damage to her homeowner's insurance carrier. An independent adjuster and a licensed contractor completed an initial noninvasive inspection and assessment of the damage to the cabin.

According to the contractor, his company and the insurance adjuster defined the scope of the repairs required for the cabin. Repairs included replacing the flooring, ceiling tiles, several sections of wallboard, insulation, kitchen cabinets, bathroom vanities, kitchen appliances, and certain furniture. Inspection groups from Nelson's mortgage company and insurance company reviewed the repairs and approved the work. The contractor acknowledged at trial that his company did not perform any specific mold remediation. However, he also testified that if his employees had discovered any hazardous materials or mold in the cabin, they would have reported the problem to the insurance adjuster.

Approximately four years later, in 2002, Nelson listed the cabin for sale. Nelson completed a Seller's Real Property Disclosure Form (SRPD), specified in NRS Chapter 113, which she provided to her realtor. The SRPD did not disclose the 1998 water damage to the cabin.

Heer viewed the cabin three or four times before making an offer on the property. Using Nelson's realtor, the parties agreed upon a contract. During an extended escrow, Heer rented the cabin from Nelson. Before escrow closed, Heer obtained several inspections of the property, but he did not request an environmental inspection.

Heer first learned of the 1998 water damage to the cabin after the sale, when his homeowner's insurance carrier canceled his policy. The carrier cited the prior water damage as the cause of the cancellation. Heer's insurance carrier then issued a new policy at a higher premium, excluding coverage for any mold and fungus claims.

Heer then hired a mold and radon service to conduct inspections for mold in the cabin. After the inspection, the company sent an unsigned "spore trap report" detailing its findings to Heer. The report showed an elevated level of mold in the guest bedroom and master bedroom closet when compared with the outside mold counts. Heer also obtained a proposal from Tom Lee, a licensed contactor. Lee's inspection of the property did not reveal any evidence of mold, even after using thermal imaging. Nevertheless, Lee provided an estimate totaling $81,000 to replace the carpeting, drywall, ceiling insulation, cabinets, and kitchen appliances. While Lee admitted at trial that he did not know exactly where in the cabin the reported mold contamination was located, he opined that the total remediation cost would probably be greater than the estimate.

Heer filed a district court complaint against Nelson and others alleging, among other things, breach of contract under NRS Chapter 113,[1] intentional misrepresentation, breach of the implied covenant of good faith and fair dealing, and negligent misrepresentation. At the close of Heer's case, Nelson moved for judgment as a matter of law under NRCP 50(a). The district court granted the motion with respect to the negligent misrepresentation claim but denied it with respect to the remaining causes of action. At the trial's conclusion, the jury returned a special verdict in favor of Heer, awarding him $327,399.20 under NRS Chapter 113 for the breach of contract claim,[2] $24,000 for intentional misrepresentation, and $10,000 for breach of the implied covenant of good faith and fair dealing. The district court entered judgment in accordance with the verdict.

Nelson then filed a combined motion for a new trial and a renewed motion for judgment as a matter of law under NRCP 50(b), arguing, among other things, that during trial Heer had failed to establish proof of the prior water damage, the existence of mold, proximate causation, and justification for damages amounting to four times the damages alleged by Lee. With respect to the last argument, Nelson pointed out that NRS Chapter 113 damages are limited to treble the defect's repair costs.[3] The district court granted Nelson's request to recalculate the damages amount awarded under NRS Chapter 113 and reduced the award by one fourth but denied the remainder of the combined motion. The district court then entered an amended judgment awarding Heer $245,549.40 under NRS Chapter 113 on the claim for breach of

---

[1] A buyer may only recover treble the cost to repair an undisclosed defect under NRS Chapter 113. NRS 113.150(4).

[2] The special verdict form awarded Heer $81,849.80 in repair damages and $245,549.40 in treble damages for a total of $327,399.20.

[3] NRS 113.150(4).

contract, $24,000 for intentional misrepresentation, and $10,000 for breach of the implied covenant of good faith and fair dealing. After unsuccessfully moving for a new trial, Nelson pursued this appeal.

## DISCUSSION

As noted, the district court denied Nelson's NRCP 50(a) and 50(b) motions for judgment as a matter of law and her motion for a new trial. Nelson contends that the district court erred in so doing because she was not required to disclose the water damage in the SRPD and had no knowledge of the mold's presence. Additionally, Nelson contends that the damages awarded in the amended judgment were not proximately caused by her omissions or supported by sufficient evidence. We agree.

Under NRCP 50(a)(1), the district court may grant a motion for judgment as a matter of law if the opposing party "has failed to prove a sufficient issue for the jury," so that his claim cannot be maintained under the controlling law.[4] The standard for granting a motion for judgment as a matter of law is based on the standard for granting a motion for involuntary dismissal under former NRCP 41(b).[5] In applying that standard and deciding whether to grant a motion for judgment as a matter of law, the district court must view the evidence and all inferences in favor of the nonmoving party.[6] To defeat the motion, the nonmoving party must have presented sufficient evidence such that the jury could grant relief to

---

[4]This rule is part of the 2005 amendments to the Nevada Rules of Civil Procedure and applies to all proceedings brought after January 1, 2005, and "all further proceedings in actions pending on that date." Order Amending the Nevada Rules of Civil Procedure, ADKT 276 (July 26, 2004). However, the former Rule 50 applies to further proceedings in actions pending on January 1, 2005, when the district court determines that the new rule's application would "not be feasible" or "would work an injustice." *Id.* On January 1, 2005, this case was pending before the district court and the trial commenced on March 15, 2005, well after the amendments were adopted. Because the district court did not determine that use of the new rule would be infeasible or work an injustice, we presume that the district court applied NRCP 50, as amended in 2005, in this case.

[5]*See* NRCP 50 (indicating within the drafter's note to the 2005 amendment that the revised rule incorporates language from former NRCP 41(b) and, thus, the same standard applies); NRCP 41(b) (2005).

[6]*Chowdhry v. NLVH, Inc.*, 109 Nev. 478, 482, 851 P.2d 459, 461-62 (1993) (applying the same evidence inferences to a motion under former NRCP 41(b) and a motion under former NRCP 50(a)); *see also Bliss v. DePrang*, 81 Nev. 599, 601, 407 P.2d 726, 727 (1965) (applying same inferences to a motion under former NRCP 50(a)); *Kline v. Robinson*, 83 Nev. 244, 247, 428 P.2d 190, 192 (1967) (applying the same inferences to a motion under former NRCP 41(b)).

that party.[7] This court applies the same standard on review that is used by the district court.[8]

If the district court does not grant a motion for judgment as a matter of law that is made at the close of all the evidence, then NRCP 50(b) provides that a "movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after service of written notice of entry of judgment and may alternatively request a new trial or join a motion for new trial under Rule 59." A renewed motion for judgment as a matter of law under NRCP 50(b) is subject to the same standard as a motion filed at the close of evidence under NRCP 50(a).[9] However, this court's review of the court's resolution of an alternative or joined motion for a new trial carries a separate standard. "The decision to grant or deny a motion for a new trial rests within the sound discretion of the trial court, and this court will not disturb that decision absent palpable abuse."[10]

Thus, the standard of appellate review for an order under either NRCP 50(a) or 50(b) is de novo, while an order granting or denying a new trial motion is reviewed for an abuse of discretion.

*NRS 113.140(1) exempts sellers of residential property from disclosing defects that they are not aware of*

Under NRS Chapter 113, residential property sellers are required to disclose any defects to buyers within a specified time before the property is conveyed.[11] NRS 113.140(1), however, provides that a seller is not required to "disclose a defect in residential property of which [she] is not aware." A "defect" is defined as "a condition that materially affects the value or use of residential property in an adverse manner."[12]

The issue presented in this case, whether Nelson was required under NRS Chapter 113 to disclose the water damage, the presence

---

[7]*Fernandez v. Admirand*, 108 Nev. 963, 968, 843 P.2d 354, 358 (1992).

[8]*Banks v. Sunrise Hospital*, 120 Nev. 822, 839, 102 P.3d 52, 64 (2004).

[9]*See* NRCP 50 (indicating within the drafter's note to the 2004 amendment that a motion filed under subdivision (b) is the renewal of a motion filed under subdivision (a) and must have been preceded by a motion filed at the appropriate time under subdivision (a)(2)).

[10]*Edwards Indus. v. DTE/BTE, Inc.*, 112 Nev. 1025, 1036, 923 P.2d 569, 576 (1996).

[11]NRS 113.130(1)(a).

[12]NRS 113.100(1).

of mold, or both, involves statutory interpretation. Issues of statutory construction are reviewed de novo.[13] It is well established that when " 'the language of a statute is plain and unambiguous, and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself.' "[14] An ambiguous statute, however, which "is capable of being understood in two or more senses by reasonably informed persons," or one that otherwise does not speak to the issue before the court, may be examined through legislative histories, reason, and considerations of public policy to determine the Legislature's intent.[15] " 'The meaning of the words used may be determined by examining the context and the spirit of the law or the causes which induced the legislature to enact it.' "[16]

We conclude that the meaning of NRS 113.140(1) is plain and unambiguous. The term "aware" means "marked by realization, perception, or knowledge."[17] Ascribing to the term "aware" its plain meaning, we determine that the seller of residential real property does not have a duty to disclose a defect or condition that "materially affects the value or use of residential property in an adverse manner,"[18] if the seller does not realize, perceive, or have knowledge of that defect or condition. Any other interpretation of the statute would be unworkable, as it is impossible for a seller to disclose conditions in the property of which he or she has no realization, perception, or knowledge. The determination of whether a seller is aware of a defect, however, is a question of fact to be decided by the trier of fact.

In this case, Heer merely asserted that Nelson should have disclosed the prior water damage and its repair. Once the water damage was repaired, however, it no longer constituted a condition that materially lessened the value or use of the cabin. Accordingly, Nel-

---

[13]*State, Div. of Insurance v. State Farm*, 116 Nev. 290, 293, 995 P.2d 482, 484 (2000).

[14]*Id.* at 293, 995 P.2d at 485 (quoting *State v. Jepsen*, 46 Nev. 193, 196, 209 P. 501, 502 (1922)).

[15]*McKay v. Bd. of Supervisors*, 102 Nev. 644, 649, 730 P.2d 438, 442 (1986); *State Farm*, 116 Nev. at 294, 995 P.2d at 485; *Clark County v. Sun State Properties*, 119 Nev. 329, 334, 72 P.3d 954, 957 (2003); *Salas v. Allstate Rent-A-Car, Inc.*, 116 Nev. 1165, 1168, 14 P.3d 511, 514 (2000).

[16]*McKay*, 102 Nev. at 650-51, 730 P.2d at 443.

[17]*Webster's Third New International Dictionary of the English Language Unabridged* 152 (1968).

[18]NRS 113.100(1).

son did not have a duty to disclose the prior water damage.[19] Because Nelson had no duty to report the repaired water damage and Heer failed to allege that Nelson was aware of, *i.e.*, realized, perceived, or even knew of, elevated amounts of mold in the cabin, Heer failed to establish a sufficient issue for the jury to decide with respect to his claim under NRS 113.130.[20] Consequently, the district court improperly entered judgment in favor of Heer on this claim.

## Intentional misrepresentation

The jury awarded Heer $24,000 for his claim of intentional misrepresentation based upon Nelson's failure to disclose the prior water damage that might have caused elevated amounts of mold within the cabin. Intentional misrepresentation is established by three factors: (1) a false representation that is made with either knowledge or belief that it is false or without a sufficient foundation, (2) an intent to induce another's reliance, and (3) damages that result from this reliance.[21] With respect to the false representation element, the suppression or omission " 'of a material fact which a party is bound in good faith to disclose is equivalent to a false representation, since it constitutes an indirect representation that such fact does not exist.' "[22] And, with respect to the damage element, this court has concluded that the damages alleged must be proximately caused by reliance on the original misrepresentation or omission.[23] Proximate cause limits liability to foreseeable conse-

---

[19]*See* NRS 113.100(1); NRS 113.140(1); NRS 113.150(4); NAC 113.150(1)(h) (providing that disclosure form required by NRS 113.130 must include, among other things, "[w]hether the seller is aware of any other conditions or aspects of the property which will affect its value or use in any adverse manner").

[20]Nelson also raised a defense under NRS 113.150(5), alleging that she relied on her contractor's assertions that the water damage was completely repaired. NRS 113.150(5)(b) provides that "[a] purchaser may not recover damages from a seller pursuant to subsection 4 on the basis of an error or omission in the disclosure form that was caused by the seller's reliance upon information provided to the seller by . . . [a] contractor . . . authorized to practice that profession." While this statute encourages owners to repair their residences using licensed contractors, we need not reach this issue because, under NRS 113.140(1), Nelson was not required to disclose the prior water damage.

[21]*Collins v. Burns*, 103 Nev. 394, 397, 741 P.2d 819, 821 (1987).

[22]*Midwest Supply, Inc. v. Waters*, 89 Nev. 210, 212-13, 510 P.2d 876, 878 (1973) (quoting *Villalon v. Bowen*, 70 Nev. 456, 467, 273 P.2d 409, 414 (1954)).

[23]*Collins*, 103 Nev. at 399, 741 P.2d at 822 (determining that an award of damages for intentional misrepresentation based on losses suffered solely due to a recession was inappropriate).

quences that are reasonably connected to both the defendant's misrepresentation or omission and the harm that the misrepresentation or omission created.[24]

The record is devoid of any evidence that the water damage to the cabin caused the presence of elevated amounts of mold in the guest bedroom. Although Heer offered Lee's testimony to estimate the remediation costs for replacing several cabin items, Lee never testified that the water damage caused elevated mold readings requiring those items to be replaced. Therefore, even when viewing the evidence in the light most favorable to him, Heer failed to establish that any omitted disclosure caused him to suffer damages for mold remediation.

Thus, the district court should have granted Nelson judgment as a matter of law, and we reverse the district court's judgment of $24,000 for Heer's claim of intentional misrepresentation, because Heer failed to establish that the water damage proximately caused the elevated amounts of mold within the guest bedroom and master bedroom closet.[25]

*Breach of the implied covenant of good faith and fair dealing*

Similarly, Heer failed to establish that Nelson breached the implied covenant of good faith and fair dealing. It is well established that all contracts impose upon the parties an implied covenant of good faith and fair dealing, which prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other.[26]

Our review of the record reveals no basis to support the jury's determination that Nelson breached the implied covenant of good faith and fair dealing. Heer asserted that Nelson breached the

---

[24]*See Goodrich & Pennington v. J.R. Woolard*, 120 Nev. 777, 784, 101 P.3d 792, 797 (2004); *Dow Chemical Co. v. Mahlum*, 114 Nev. 1468, 1481, 970 P.2d 98, 107 (1998).

[25]Heer also argued that Nelson's intentional failure to disclose the water damage forced him to pay a higher insurance premium. Heer asserted that his insurance carrier canceled his original insurance contract, which carried a lower premium than his current contract, based solely on the fact that the cabin previously suffered water damage. However, Heer did not offer any evidence to establish that Nelson knew or should have known that the water damage, which was repaired by a licensed contractor, was a material factor Heer would have considered when purchasing the cabin. Thus, Heer failed to establish that Nelson was bound in good faith to disclose the repaired water damage or that she intended for him to rely on her omission.

[26]*University & Cmty. Coll. Sys. v. Sutton*, 120 Nev. 972, 989, 103 P.3d 8, 19 (2004); *Frantz v. Johnson*, 116 Nev. 455, 465 n.4, 999 P.2d 351, 358 n.4 (2000); *Consolidated Generator v. Cummins Engine*, 114 Nev. 1304, 1311, 971 P.2d 1251, 1256 (1998).

covenant of good faith and fair dealing by failing to disclose the prior water damage. Nelson, however, did not have a duty under the contract to disclose the water damage. The contract between the parties obligated Nelson to make those disclosures that were required under NRS 113.130,[27] and we have already concluded that Nelson was not under any NRS 113.130 duty to disclose the water damage to Heer. Since Nelson bore no contractual duty to disclose the water damage, Nelson's omission did not constitute an arbitrary or unfair act that worked to Heer's disadvantage.

Thus, because Heer's allegations were insufficient, as a matter of law, to prevail on his claim for breach of the implied covenant of good faith and fair dealing, the district court erred when it awarded damages under that theory based upon Nelson's failure to disclose the prior water damage.[28]

## CONCLUSION

Under NRS 113.140(1), a seller of residential property has a duty to disclose only those conditions that materially and adversely affect the value or use of the property, and of which the seller is aware, realized, perceived, or knew. Because repaired water damage does not constitute a defect under NRS Chapter 113 and Nelson did not know of the presence of elevated amounts of mold in the cabin, she did not violate the disclosure requirements contained in NRS 113.130 when she completed the SRPD. Therefore, as the district court should have granted Nelson judgment as a matter of law, we reverse that portion of the district court's amended judgment awarding Heer $245,549.40 under NRS Chapter 113.

Additionally, during trial, Heer failed to establish that the prior water damage proximately caused the presence of the elevated amounts of mold within the cabin. Heer also failed to establish that Nelson breached the implied covenant of good faith and fair dealing, because Nelson did not arbitrarily or unfairly act to Heer's disadvantage.[29] Accordingly, as judgment as a matter of law was

---

[27]The contract also provided that Heer could have requested an environmental hazard inspection for the cabin. However, Heer failed to request such an inspection.

[28]Nelson argues that the spore trap report provided by Stephens Mold and Radon Investigation was improperly admitted at trial because it was not authenticated and the testing methods used to create the report were not proven to be reliable. However, we determine that the district court did not abuse its discretion when it admitted the spore trap report because the report was a stipulated exhibit that appeared on the amended joint pretrial memorandum.

Nelson also argues that this court should apply the doctrine of cumulative error to civil cases. We decline to reach this issue because we determine that Nelson's alleged errors in the context of the trial are without merit.

[29]In light of this opinion, we do not reach Nelson's remaining arguments.

also appropriate on these claims, we reverse the district court's amended judgment awarding Heer $24,000 for intentional misrepresentation and $10,000 for breach of the implied covenant of good faith and fair dealing. We dismiss, as moot, that portion of the appeal taken from the district court's order denying Nelson's motion for a new trial.

PARRAGUIRRE and SAITTA, JJ., concur.