**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICHARD S. GALE,
        *Plaintiff-Appellant,*

v.

FIRST FRANKLIN LOAN SERVICES,
subsidiary of First Franklin
Financial Corporation; FIRST
FRANKLIN FINANCIAL CORPORATION;
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.; CAL-
WESTERN RECONVEYANCE
CORPORATION; LASALLE BANK
NATIONAL ASSOCIATION,
        *Defendants-Appellees.*

No. 09-16498

D.C. No.
2:08-cv-01615-
RCJ-PAL

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, Chief District Judge, Presiding

Argued and Submitted
May 14, 2012—San Francisco, California

Filed July 12, 2012
Amended August 31, 2012

Before: Sidney R. Thomas, M. Margaret McKeown, and
William A. Fletcher, Circuit Judges.

Opinion by Judge McKeown

10351

---

**COUNSEL**

Michael Rubin, Jennifer Sung, ALTSHULER BERZON LLP, San Francisco, California, for the plaintiff-appellant.

Peter Dunkley, WOLFE & WYMAN LLP, Las Vegas, Nevada, for defendants-appellees.

---

**ORDER**

The opinion filed on July 12, 2012, slip op. 8053, 2012 WL 2855811, is amended as follows:

At slip op. 8061, at the end of the first full paragraph; 2012 WL 2855811 at *4, at the end of the first full paragraph, insert the following text:

Unable to rely squarely on § 1641, Gale leans upon another section of the statute for support, § 1640(a). At the time Gale's action accrued, this subsection, in relevant part, read, "any creditor who fails to comply with any requirement imposed under [TILA Part B, including § 1641], . . . is liable" for actual and statutory damages. Gale points out that the term "creditor" refers only to an *original* creditor, not an assignee. *See* 15 U.S.C. § 1602(f)(2) ("creditor" defined as "the person to whom the debt arising from the consumer credit transaction

is initially payable"). Therefore, in providing a cause of action against "creditor[s]," § 1640(a) extends § 1641(f) assignee liability to *original* creditors such as Franklin, as well as assignees.

This argument proves too much. Each subsection of § 1641 limits liability on its face to assignees. Gale's argument essentially boils down to the claim that in one fell swoop, § 1640(a)'s reference to a "creditor" erases all of these limitations, and broadens liability to original creditors—in § 1641 and throughout Part B of TILA. Subsection 1640(a) is far too small a "mousehole[ ]" to hide an "elephant[ ]" of such proportions. *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001).

Seeking to bolster his argument, Gale relies on the 2009 TILA amendments, in which Congress specified that the § 1640(a) cause of action extends to a creditor's failure to satisfy "any requirement imposed under . . . subsection (f) or (g) of section 1641 of this title . . . ." Helping Families Save Their Homes Act of 2009, Pub. L. No. 111-22, 123 Stat. 1632, 1658. Gale argues that this amendment would be superfluous if an original creditor could be held liable under § 1641(f). At the outset, Gale's action accrued in 2008; he cannot rely on amendments Congress made after his action accrued to bolster his claim. In any case, the 2009 amendments betray Gale's position. In the 2009 amendments, along with the clause upon which Gale relies, Congress added § 1641(g), which suggests that the narrow definition of "creditor" in § 1602 is no longer valid. Subsection (g) applies to a "*creditor* that is the *new owner or assignee* of the debt." (Emphases added). Given this broader definition which includes assignees, it makes perfect sense for Congress to refer in § 1640(a) to § 1641 provisions whose effect is limited to assignees.

\* \* \*

With the opinion as amended, the panel has voted to deny the petition for rehearing and rehearing en banc. The full

court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for panel rehearing and the petition for rehearing en banc are DENIED. No further petitions for rehearing may be filed.

---

## OPINION

McKEOWN, Circuit Judge:

Failing to read and respond to letters may be impolite; however, "a breach of good manners" is not always "an invasion of any legal right." *Spaulding v. Evenson*, 149 F. 913, 920 (C.C.E.D. Wa. 1906). Richard Gale faults his lender, First Franklin Loan Services ("Franklin"), for failing to respond to his correspondence regarding ownership of his loan, and alleges that this failure amounted to a violation of the Truth in Lending Act ("TILA"), and Nevada's covenant of good faith and fair dealing. Because Franklin was not legally required to respond in its capacity as loan servicer, we affirm the district court's dismissal of these claims. However, Gale also alleges that after failing to respond to his letter, Franklin and the other defendants engaged in illegal conduct by wrongfully foreclosing on his property. We remand these remaining state law claims to the district court.

### BACKGROUND

In November 2006, Gale refinanced his home mortgage loan with Franklin, and signed a promissory note. Franklin was both the creditor and servicer for the loan. A deed of trust on Gale's residence in Las Vegas secured the loan. The deed designated Mortgage Electronic Registration Systems, Inc. ("MERS") as the trust beneficiary, "acting solely as a nominee for [Franklin] . . . . ," and Service Link as the trustee.

By June 2008, Gale had lost his job, defaulted on the loan, and was facing financial difficulties. In a bid to renegotiate his loan, he sent a letter to Franklin in June, explaining his predicament, his resolve to pay the amount due, and suggesting possible solutions. However, to ensure that he was courting the right audience, he also asked that Franklin, "in accordance with [TILA,] 15 U.S.C. § 1641(f)(2) . . . provide the name and address of the true owner of the obligation or holder [of his promissory note]; the original note and indicate [First Franklin's] relationship to this entity," to protect himself from collection efforts by a third party. Gale received no response to his initial letter, and wrote again in August 2008. Franklin remained resolutely silent, no renegotiations took place, and Gale continued to fall behind on his loan payments.

As it turned out, Gale's loan was the subject of much activity. In August 2008, beneficiary MERS substituted defendant Cal-Western in place of Service Link as trustee of Gale's deed of trust, and together with Cal-Western initiated non-judicial foreclosure proceedings on Gale's residence. Later that month, MERS assigned "all beneficial interest" to "LaSalle Bank as trustee for the First Franklin Mortgage Loan Trust." Finally, in November 2008, Cal-Western recorded a Notice of Trustee's Sale of Gale's home.

Gale filed suit against all the actors involved—Franklin, MERS, Cal-Western and LaSalle Bank—alleging violations of TILA, seeking injunctive relief against foreclosure, and claiming breach of contract, failure to act in good faith, and wrongful foreclosure under Nevada law. The district court dismissed Gale's Nevada law claims with prejudice, but permitted Gale to amend his Complaint as to TILA. Gale's First Amended Complaint set out his TILA claims more specifically, and claimed a breach of the covenant of good faith and fair dealing. Gale also alleged that Cal-Western violated its duty under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, to respond to his qualified

written request for information. The court dismissed the amended complaint without leave to amend.[1]

## ANALYSIS

Gale's suit focuses on two alleged wrongs: Franklin's failure to reply to his letter, and the foreclosure proceedings on his home. His federal claims target only Franklin's failure to respond; his state claims target both the failure to respond and the foreclosure.

## I.  Federal Claims

**[1]**  In his initial letter to Franklin and again in his amended complaint, Gale claims that Franklin violated TILA, 15 U.S.C. § 1641(f)(2), which provides in relevant part: "Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation." Gale's argument is simple: Franklin was his loan servicer, and under the plain language of the statute, was obliged to respond to his inquiry.

Gale's argument has surface appeal if we take a blindered view of the statute and read the language he highlights in isolation. However, "we start with the premise that 'the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.' " *Am. Bankers Ass'n v. Gould*, 412 F.3d 1081, 1086 (9th Cir. 2005) (quoting *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). Our goal is to "understand the statute 'as a symmetrical and coherent regulatory scheme' and to 'fit, if possible, all parts into a . . . harmonious whole.' " *Id.* (quoting *Brown & Williamson*, 529 U.S. at 133). Gale places

---

[1]Although the order did not specify whether the court was granting dismissal, summary judgment, or both, the final judgment reflects that the district court granted "Defendants' Motion to Dismiss."

emphasis on the final sentence of § 1641(f)(2), but the context of the sentence within subsection (f), and within § 1641 as a whole, indicates that liability for failing to respond attaches only to those servicers who are *also assignees* of the loan. Because Franklin was not an assignee of the loan, but rather the original creditor, Gale's claim fails.

  **[2]** Consistent with basic principles of statutory interpretation, we step back to examine § 1641 as a whole before focusing on paragraph (f)(2). Section 1641 does not address the liability of creditors in general; rather each of § 1641's subsections address entities who are *purchasers or assignees* of mortgages. *See, e.g.*, § 1641(a) (A "civil action for a violation . . . may be maintained against any assignee . . . only if the violation . . . is apparent on the face of the disclosure statement, except where the assignment was involuntary."); § 1641(b) (concerning statutory compliance by a "subsequent assignee of the original creditor"); § 1641(c) ("Any consumer who has the right to rescind a transaction . . . may rescind the transaction as against any assignee of the obligation."); § 1641(d)(1) ("Any person who purchases or is otherwise assigned a mortgage . . . shall be subject to all claims and defenses with respect to that mortgage."). Subsection (f), the final subsection of § 1641 at the time Gale's action accrued, is no exception.[2] Although it concerns servicers in particular, these servicers, like the other entities regulated by § 1641, are also assignees:

  *(f) Treatment of servicer*

---

  [2]In 2009, Congress added subsection (g), which continues the pattern, and requires that "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer . . . ." The Helping Families Save Their Homes Act of 2009, Pub. L. No. 111-22, § 404(g), 123 Stat. 1632, 1658 (2009).

*(1) In general*

A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.

*(2) Servicer not treated as owner on basis of assignment for administrative convenience*

A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.

Subsection (f), in keeping with the theme of § 1641 as a whole, and the other subsections of § 1641, addresses only the assignee liability of a servicer, and sets out a general rule that a servicer must be the assignee-owner of the obligation to incur assignee liability. As the House Report for the TILA amendments that added subsection (f) explained, "A number of recent consumer lawsuits against mortgage loan servicers have claimed the servicer is an assignee of the creditor who made the loan and is therefore liable . . . . This provision clarifies that the loan servicer (the entity collecting payments from the consumer and otherwise administering the loan) is not an 'assignee' under the TILA unless the servicer is the owner of the loan obligation." H. R. Rep. No. 104-193, at 99 (1995).

However, Congress did not intend that all servicers who owned loans would be liable as assignees. Paragraph (f)(2) carves out an exception to the general rule of paragraph (f)(1), so that servicers who are merely nominal assignees (that is, when a servicer is assigned ownership of the loan solely for "administrative convenience") would not be liable on the same basis as actual owners of the loan. The paragraph ends with the sentence that is the basis of Gale's claim, which places on "the servicer" the duty to respond to correspondence from the consumer.

Read in this context, our analysis of this last sentence is straightforward. As a logical matter, it would be anomalous for Congress to randomly impose a duty on servicers in general in a section otherwise completely devoted to describing the duties of assignees, and more critically, in a subsection that pertains only to servicer-assignees.

Close scrutiny of paragraph f(2) supports the same reading. The paragraph begins by addressing the duties of "[a] servicer of a consumer obligation." The next sentence, on which Gale states his claim, imposes a duty to respond not upon "a" servicer, or "any" servicer, but rather, states that "*the* servicer shall provide the obligor, to the best knowledge of *the* servicer, with the name, address, and telephone number of the owner." (Emphasis added.) "In construing [a] statute, [the] definite article 'the' particularizes the subject which it precedes and is [a] word of limitation as opposed to [the] indefinite or generalizing force [of] 'a' or 'an.'" *Onink v. Cardelucci (In re Cardelucci)*, 285 F.3d 1231, 1234 (9th Cir. 2002) (quoting Black's Law Dictionary 1477 (6th ed. 1990)). The use of the definite article in referring to the servicer only makes sense by reference to the preceding sentence of paragraph (f)(2), which relates to "[*a*] servicer of a consumer obligation" who is a nominal owner "on the basis of an *assignment* of the obligation" for "administrative convenience." (Emphases added.) Such a servicer escapes liability because it is only a nominal owner of the note, but must still

respond to an obligor seeking information as to the true owner of the note.

**[3]** In short, reading the statute as a whole and with respect to the subsection at issue brings us to the same conclusion: the duty to provide notice under § 1641(f)(2) applies only to a servicer-assignee, which in this case does not include Franklin.

Unable to rely squarely on § 1641, Gale leans upon another section of the statute for support, § 1640(a). At the time Gale's action accrued, this subsection, in relevant part, read, "any creditor who fails to comply with any requirement imposed under [TILA Part B, including § 1641], . . . is liable" for actual and statutory damages. Gale points out that the term "creditor" refers only to an *original* creditor, not an assignee. *See* 15 U.S.C. § 1602(f)(2) ("creditor" defined as "the person to whom the debt arising from the consumer credit transaction is initially payable"). Therefore, in providing a cause of action against "creditor[s]," § 1640(a) extends § 1641(f) assignee liability to *original* creditors such as Franklin, as well as assignees.

This argument proves too much. Each subsection of § 1641 limits liability on its face to assignees. Gale's argument essentially boils down to the claim that in one fell swoop, § 1640(a)'s reference to a "creditor" erases all of these limitations, and broadens liability to original creditors—in § 1641 and throughout Part B of TILA. Subsection 1640(a) is far too small a "mousehole[ ]" to hide an "elephant[ ]" of such proportions. *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001).

Seeking to bolster his argument, Gale relies on the 2009 TILA amendments, in which Congress specified that the § 1640(a) cause of action extends to a creditor's failure to satisfy "any requirement imposed under . . . subsection (f) or (g) of section 1641 of this title . . . ." Helping Families Save Their

Homes Act of 2009, Pub. L. No. 111-22, 123 Stat. 1632, 1658. Gale argues that this amendment would be superfluous if an original creditor could be held liable under § 1641(f). At the outset, Gale's action accrued in 2008; he cannot rely on amendments Congress made after his action accrued to bolster his claim. In any case, the 2009 amendments betray Gale's position. In the 2009 amendments, along with the clause upon which Gale relies, Congress added § 1641(g), which suggests that the narrow definition of "creditor" in § 1602 is no longer valid. Subsection (g) applies to a "*creditor* that is the *new owner or assignee* of the debt." (Emphases added). Given this broader definition which includes assignees, it makes perfect sense for Congress to refer in § 1640(a) to § 1641 provisions whose effect is limited to assignees.

Gale argues for the first time on appeal that Franklin violated RESPA. Although pro se plaintiffs "need not plead specific legal theories in the complaint," we require that "the other side receive[ ] notice as to what is at issue in the case" against it. *Sagana v. Tenorio*, 384 F.3d 731, 736-37 (9th Cir. 2004) (internal quotation marks and citation omitted). Gale did not merely fail to plead a RESPA claim against Franklin, but advanced a RESPA claim against a different defendant, Cal-Western. We therefore decline to consider the RESPA claim. *See In re Am. W. Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir. 2000).

**[4]** We are not unsympathetic to the frustration that resulted from Franklin's failure to respond to Gale's inquiry regarding his home. The servicer is often the only entity that the consumer is in contact with after the loan issues—unless the servicer is forthcoming, the homeowner may not know with whom to negotiate to stave off foreclosure and loss of his abode. Although Congress recognized the importance of such information *after* Gale's claim accrued, *see* Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1463, 124 Stat. 1376, 2182 (2010) (amending RESPA to require all servicers to respond to requests for information),

Gale cannot claim liability under this provision and we affirm dismissal of his claims arising from Franklin's failure to respond.

## II.  Nevada State Law Claims

Gale also advances numerous state law claims. The first claim again arises out of Franklin's failure to respond, which, Gale alleges, violated the covenant of good faith and fair dealing. The remaining claims arise out of the actual foreclosure action against Gale. Gale argues that MERS and LaSalle wrongfully began foreclosure proceedings, and Cal-Western breached its duty to act in good faith and its fiduciary duties in proceeding with the foreclosure. The district court dismissed these claims.

**[5]** To state a claim for breach of the covenant of good faith and fair dealing under Nevada law, Gale must show that Franklin acted in an "arbitrary or unfair" way "to the disadvantage of the" plaintiff. *Nelson v. Heer*, 163 P.3d 420, 426-27 (Nev. 2007). Failing to respond to correspondence in this context hardly qualifies as "arbitrary or unfair." The rule Gale proposes would require contracting parties to respond to correspondence on the pain of legal penalty. In the absence of an express contractual provision to the contrary, we cannot hold Franklin to such a standard.

Gale points us to *Mitchell v. Bailey & Selover, Inc.*, which involved a contract for transportation and storage of property that gave the bailee "the right to sell [a customer's] property if, in the company's opinion, such action was necessary to protect its accrued charges." 605 P.2d 1138, 1139 (Nev. 1980). Although Mitchell contacted the bailee and provided evidence that she was owed social security payments that would allow her to pay the debt, the bailee sold her property nonetheless. Because the bailee "knew that [Mitchell's] inability to pay her debt might soon be remedied, and in fact was remedied," an issue of fact remained as to whether it

could have, as provided by the contract, formed an "opinion" "that a sale . . . was necessary to protect its accrued charges." *Id.* Without a good faith belief that a sale was necessary, the bailee could not sell the property.

**[6]** By contrast, under Gale's contract, default automatically provides the right of foreclosure, whether or not the holder of the note and mortgage believes that the default might be remedied. The holder need form no opinion, in good faith or otherwise, as to whether its investment is safe, before it may proceed. *Mitchell* is therefore inapplicable, and we affirm the district court's dismissal of this claim.

**[7]** Before the district court, Gale invoked Nev. Rev. Stat. § 104. That section does not pertain to non-judicial foreclosures, although Gale also claimed inadequacy in the actual foreclosure process, including lack of ownership of the note. With the benefit of appointed counsel, Gale's wrongful foreclosure and related breach of fiduciary duty claims have been refined on appeal. The district court did not have the opportunity to consider Nevada case law and statutory provisions that Gale now uses to bolster the claims advanced below. Nonetheless, at this stage, Gale has no remaining federal claims. We therefore vacate the district court's dismissal of these claims, so that the district court may consider Gale's argument in the first instance, or exercise its discretion to remand these claims to state court.

**AFFIRMED IN PART, VACATED IN PART, and REMANDED.** Each party shall bear its own costs on appeal.