IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| HARRAH'S LAS VEGAS, LLC, d/b/a/ HARRAH'S CASINO HOTEL LAS VEGAS, LLC, Appellant, vs. JEAN ANN MUCKRIDGE, Respondent. | No. 78678 <br><br> **FILED** <br><br> OCT 01 2020 <br><br> ELIZABETH A. BROWN <br> CLERK OF SUPREME COURT <br> BY _____ <br> CHIEF DEPUTY CLERK |

## ORDER OF AFFIRMANCE

Appeal from final judgment, a post-judgment order awarding attorney fees, an order denying a motion for a new trial, and an amended judgment awarding costs and prejudgment interest in a tort action. Eighth Judicial District Court, Clark County; Judge Richard Scotti.

This case arises from a slip-and-fall accident. Respondent Jean Ann Muckridge slipped and injured herself after stepping on a wet floor while staying at appellant, Harrah's Casino Hotel.

Muckridge checked into Harrah's Casino Hotel on March 2, 2015 and went straight to her room on the eleventh floor. The next day, around 10:30 a.m., Muckridge left her room to get ice from the ice machine room. The hallways of the eleventh floor had carpeting that abutted the tile floor of the ice machine room. Muckridge noticed the door to the ice machine room was propped open with a trashcan. As Muckridge stepped onto the tile floor of the ice machine room with her left foot she immediately slipped and fell.

Muckridge saw a maid down the hall and called out for help. Harrah's employees arrived to attend to Muckridge. Muckridge noticed the

20-35997

left side of her jeans were wet and that the carpet abutting the ice machine room was also wet, extending roughly three feet from the doorway of the ice machine room, but saw no liquid on the ice machine room floor. Muckridge filled out a guest report of the incident and returned to her room. She was later treated for the injuries she sustained from the slip-and-fall.

Muckridge sued Harrah's on December 12, 2016, and the case proceeded to trial on her negligence claim.[1] Three Harrah's employees testified at trial: (1) engineer Ron Waters, (2) security officer Paul Lee; and (3) houseperson Rogelia Pena. Waters and Pena testified that the ice machine room door closes automatically, but that the door would be propped open if there was a problem in the room. All three employees testified that ice spills in the hallway had happened before or were not uncommon. The employees also testified that the carpet immediately outside the ice machine room was wet when Muckridge fell, although none testified to seeing ice on the floor. Waters, who frequently walks past the ice machine room on the way to his office, stated that he saw ice spilled inside the ice machine room "pretty often." However, when Waters investigated at the time of the incident, he found no problems with the ice machine, vending machine, or plumbing, and he observed that the tile floor inside the ice machine room was dry. Waters testified that there are a lot of employees around the ice machine room and Pena testified that he may pass by the ice machine up to eight times per shift. Lee filled out an incident report shortly

---

[1]Harrah's moved for summary judgment and the district court granted the motion with respect to all of Muckridge's claims except for negligence.

after the incident, indicating that Waters reported a guest had probably spilled ice on the carpet and it melted.[2]

Muckridge retained Thomas Jennings as an expert witness. Jennings is a safety engineer who consults various government agencies and businesses and also conducts forensic engineering. In preparing his testimony, Jennings reviewed Harrah's incident report, Muckridge's report, and photographs of the area and Muckridge's shoes.

When Jennings sought to perform an inspection of the ice machine room and conduct a slip-resistance test, he and Muckridge learned that Harrah's had replaced the tiles in the ice machine room during a renovation a year-and-a-half earlier. Muckridge declined Harrah's offer to test what it claimed to be a similar tile flooring in a different tower. Because Jennings was unable to conduct the slip-resistance test on the actual tiles from the accident, he conducted a failure mode analysis test.[3]

Jennings opined that the water on the carpet abutting the ice machine room was an unsafe condition; that tracking water from that carpet onto the tile floor of the ice machine room led to a significant potential for a slip-and-fall event; that the tile floor in the ice machine room, when wet, likely fell below the national standard for a safe and slip-resistant walking surface; and that, if the floor was slip-resistant, it would be safe regardless of where the wetness came from, the duration of the

---

[2]At trial, Waters denied making that statement.

[3]Jennings explained that a failure mode analysis requires a safety engineer to review all available evidence and examine all relevant factors surrounding the event that contributed to the fall. He further explained the analysis as, "deductive reasoning." Factors considered would include footwear worn, lighting in the area, the victim's line of vision, etc.

wetness, or the type of liquid that created the wetness. Jennings also testified that determining the source of the wetness would be speculation, and that he did not have an opinion as to whether Harrah's caused the accident or how long the carpet was wet.

At trial, Muckridge sought an adverse inference jury instruction based on Harrah's destruction of the tile floor. Muckridge argued Harrah's was on notice of her claim in November of 2015 and therefore had a duty to preserve the floor at that time. The district court granted the motion and gave a generic adverse inference instruction that did not mention any specific evidence or party. Additionally, based on Jennings's testimony presented at trial that the floor fell below the national standard for slip-resistant floors, the parties briefed, and the district court heard oral argument, regarding instructing the jury on negligence per se. The district court ultimately allowed the instruction.

On the final day of trial, Harrah's moved for judgment as a matter of law under NRCP 50(a), arguing that Muckridge failed to produce sufficient evidence that Harrah's had actual or constructive notice of the wet floor that caused Muckridge's accident. The district court denied the motion. The jury issued a general verdict in favor of Muckridge, awarding $67,047.94 for past medical expenses and $40,000 for past pain and suffering. Including prejudgment interest, the district court entered judgment on the verdict for $122,109.62.

After the verdict, Harrah's renewed its motion for judgment as a matter of law, or alternatively, for a new trial pursuant to NRCP 59. The district court denied the renewed motion and also denied the motion for a new trial, concluding that sufficient evidence supported giving the adverse

inference instruction and that the expert's testimony supported instructing the jury on negligence per se.

The district court granted Muckridge's motion for attorney fees, awarding her $42,819.17. The amended judgment therefore awarded Muckridge her damages, attorney fees, and $34,229.48 in litigation costs, along with prejudgment interest for a total of $184,096.59. Harrah's appeals.

## DISCUSSION

Harrah's argues the district court erred by denying its motion for judgment as a matter of law, or, in the alternative, motion for a new trial[4] and abused its discretion in permitting Muckridge's expert to testify, in giving an adverse inference instruction, and in awarding attorney fees.[5] For the reasons discussed below, we affirm.

---

[4]Because we agree the district court properly denied Harrah's motion for judgment as a matter of law as sufficient evidence supports the verdict, we need not separately address Harrah's argument that the district court improperly denied summary judgment. Our refusal to review the district court's denial of summary judgment does not prejudice Harrah's, as Harrah's still had the right to establish the merits of its motion at trial. *See Mountain Fir Lumber Co., Inc. v. Temple Distributing Co.*, 688 P.2d 1378, 1379-1382 (Or. Ct. App. 1984). Otherwise, a party who had "sustained his position after a fair hearing of the whole case might nevertheless lose, because he had failed to prove his case fully on an interlocutory motion." *Id.* at 1381 (quoting *Bell v. Harmon*, 284 S.W.2d 812, 814 (Ky. 1955)).

[5]Muckridge contends the general verdict rule applies to moot Harrah's appellate arguments where negligence per se satisfies the breach element of her claim. However, because the general verdict rule does not apply where overlapping factual theories support one theory of recovery, *see FGA, Inc. v. Giglio*, 128. Nev. 271, 280, 278 P.3d 490, 496 (2012), and negligence per se is not a separate cause of action, *see Munda v. Summerlin Life & Health Ins. Co.*, 127 Nev. 918, 922 n.3, 267 P.3d 771, 773 n.3 (2011), that rule does not apply here to bar Harrah's arguments on appeal.

*Judgment as a matter of law, or alternatively, a new trial*

Harrah's argues the evidence was insufficient and that the district court should have granted its motion for judgment as a matter of law, or alternatively, a new trial.[6] We disagree.

We review a district court's order denying a motion for judgment as a matter of law de novo, while a district court's order denying a new trial is reviewed for an abuse of discretion. *Nelson v. Heer*, 123 Nev. 217, 223, 163 P.3d 420, 425 (2007). To defeat the motion for judgment as a matter of law in a jury trial, "the nonmoving party must have presented sufficient evidence such that the jury could grant relief to that party." *Id.* at 222-23, 163 P.3d at 424 (2007).

To succeed on her negligence claim, Muckridge had to establish the following elements at trial: (1) Harrah's owed a duty of care to Muckridge; (2) Harrah's breached that duty; (3) the breach was the legal cause of the injury; and (4) Muckridge suffered damage. *Scialabba v. Brandise Constr. Co.*, 112 Nev. 965, 968, 921 P.2d 928, 930 (1996). At issue here is the breach element of negligence. A business will be liable for a slip and fall "only if the business had actual or constructive notice of the condition and failed to remedy it." *Sprague v. Lucky Stores, Inc.*, 109 Nev. 247, 250, 849 P.2d 320, 322-23 (1993).

Our review of the record shows Muckridge presented sufficient evidence such that the jury could find Harrah's had either actual or constructive notice of the dangerous condition. As to actual notice, the

---

[6]Harrah's also argues the district court should have granted its motion because expert testimony should be required to establish what is a "reasonable inspection." Harrah's contention has no support under Nevada law and we decline to adopt such a rule in this case.

testimony that the door to the ice machine room was propped open,[7] coupled with Harrah's employees' testimony that the door would only be propped open if there was an issue in the machine room, supports that Harrah's had actual notice.

Muckridge also presented sufficient evidence of constructive notice. To that end, the parties do not dispute that the carpet abutting the ice machine was wet. Harrah's employees provided testimony that it was not uncommon for ice to spill in and around the ice machine room. Muckridge also presented sufficient evidence that Harrah's was experiencing high demand and was fully-staffed at the time. Under these facts, a jury could reasonably infer that a lot of staff had walked through the area, and someone likely would have noticed the wet floor. This is bolstered by the fact that the ice machine room door was propped open. Moreover, the fact that the carpet was wet, combined with the dry tile and the propped open door, suggests that the condition had been there for some time, i.e., long enough for the tile to dry but not the carpet. Viewing all evidence and inferences in favor of Muckridge, *Nelson*, 123 Nev. at 222, 163 P.3d at 424, we conclude the jury could reasonably infer that Harrah's was on notice of the wet floor leading into the ice machine room. In turn, we conclude the district court did not err or abuse its discretion by denying Harrah's motions.[8]

---

[7]This is true especially where Harrah's did not controvert Muckridge's testimony that the door was propped open.

[8]Sufficient evidence also supports the negligence per se theory of recovery as Muckridge's expert testified that the flooring in the ice machine room likely fell below the national standard for safe and slip-resistant walking surfaces.

*Muckridge's expert's testimony*

Harrah's argues the district court erred by not excluding Jennings's opinions. Harrah's contends Jennings's opinions were irrelevant as to the issue of notice and also unreliable because they were based on assumption and conjecture. Reviewing for an abuse of discretion, *Hallmark v. Eldridge*, 124 Nev. 492, 498, 189 P.3d 646, 650 (2008); *Krause Inc. v. Little*, 117 Nev. 929, 934, 34 P.3d 566, 569 (2001) ("We will only reverse a district court's decision to admit expert testimony on a showing of a clear abuse of discretion."), we disagree. "An abuse of discretion occurs when no reasonable judge could reach a similar conclusion under the same circumstances." *Leavitt v. Siems*, 130 Nev. 503, 509, 330 P.3d 1, 5 (2014). In determining whether an expert is qualified, the district court must consider whether the testimony will assist the factfinder and whether the expert's opinion is based on reliable methodology. *Hallmark*, 124 Nev. at 500, 189 P.3d at 651. Harrah's only challenges the latter consideration here, which requires the court to assess "whether the [expert's] opinion is . . . based more on particularized facts rather than assumption, conjecture, or generalization." *Id.* at 500-01, 189 P.3d at 651-52.

Jennings based his testimony on his review of the incident report, Muckridge's guest report, and photographs of the area and of Muckridge's shoes. He also conducted a failure mode analysis. We conclude the district court did not abuse its discretion by finding, under these circumstances, that Jennings's testimony was based on particularized facts and therefore his opinion was based on a reliable methodology. Moreover, Jennings's testimony helped the jury to understand Muckridge's negligence per se theory, as it supported the existence of a dangerous condition and

explained why Harrah's conduct fell below the national standard of care.[9] Accordingly, the district court properly admitted Jennings's expert testimony.

*Adverse inference jury instruction*

Harrah's argues the district court erred in giving a spoliation instruction based on Harrah's failure to preserve the ice machine room flooring. It argues it had no duty to preserve the floor and that Muckridge's expert could have tested a similar floor in a different building owned by Harrah's. Harrah's also argues that Muckridge's failure to raise the issue before trial resulted in trial by ambush. We disagree.

We review a district court's decision to give a jury instruction for an abuse of discretion or judicial error. *FGA, Inc. v. Giglio*, 128 Nev. 271, 280, 278 P.3d 490, 496 (2012). We will affirm so long as the district court "has examined the relevant facts, applied a proper standard of law, and, utilizing a demonstratively rational process, reached a conclusion that a reasonable judge could reach." *Bass-Davis v. Davis*, 122 Nev. 442, 447-48, 134 P.3d 103, 106 (2006); *see also Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001) (holding that, if a jury instruction accurately states the law, this court will not disturb the district court's discretionary decision to issue a jury instruction unless the decision is arbitrary or capricious).

The threshold question in a spoliation case is whether the alleged spoliator had a duty to preserve the evidence. *Bass-Davis*, 122 Nev. at 450, 134 P.3d at 108. We "have held that a party is required to preserve

---

[9]Moreover, it was for the jury to assess whether his testimony was credible. NRS 50.305; *Houston Exploration Inc. v. Meredith*, 102 Nev. 510, 513, 728 P.2d 437, 439 (1986) (explaining in the context of a challenge to expert testimony as speculative that it is "for the jury to determine the weight to be assigned such testimony").

 

documents, *tangible* items, and information relevant to litigation that are reasonably calculated to lead to the discovery of admissible evidence." *Id.* (emphasis added). The duty arises where a party is on "notice" of a possible legal claim. *Id.* And a party is on notice of a possible claim when litigation is reasonably foreseeable. *Id.*

Here, a reasonable judge could conclude Harrah's was on notice that litigation was reasonably foreseeable at the time it replaced the floor and therefore had a duty to preserve relevant evidence. First, litigation was "reasonably foreseeable" simply because Muckridge suffered an accident and injury. *See Bass-Davis*, 122 Nev. at 452, 134 P.3d at 109 (noting that litigation was reasonably foreseeable on the date of an accident in which a patron suffered a broken hip and that defendant had an obligation to preserve evidence relevant to the accident). Additionally, no party contests that Harrah's was aware of Muckridge's fall as she summarized the incident in a guest report and Lee, a Harrah's employee, investigated the incident and issued an incident report. Lee testified that Harrah's employees complete incident reports in anticipation of litigation. These facts support a finding that Harrah's was on notice of potential litigation the day of Muckridge's accident.[10] *See, e.g., Fire Ins. Exchange v. Zenith Radio Corp.*, 103 Nev. 648, 651, 747 P.2d 911, 914 (1987) (noting that "even where an action has not been commenced and there is only a potential for litigation, the litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action"). Harrah's was therefore

---

[10]Muckridge also argued below that she provided notice of a potential lawsuit to Harrah's in 2015, before any renovations, and through a November 9, 2015, insurance claim to a third-party administrator.

under a duty to preserve relevant, tangible evidence—including the floor on which the accident occurred.

Harrah's fails to show that the adverse inference instruction amounted to trial by ambush warranting reversal here. This is not a situation where, for example, Muckridge attempted to introduce undisclosed evidence during trial. *Cf. Land Baron v. Bonnie Springs Family LP*, 131 Nev. 686, 701 n.14, 356 P.3d 511, 522 n.14 (2015) ("Trial by ambush traditionally occurs where a party withholds discoverable information and then later presents this information at trial, effectively ambushing the opposing party through gaining an advantage by the surprise attack."). Rather, here, Harrah's was on notice that Muckridge had a potential claim involving the floor when she filed her incident report. Furthermore, Harrah's undeniably knew at least six months before trial, that Muckridge wanted to test the floor and could not do so because of Harrah's actions.[11] Under these facts, Harrah's should have been aware that it might be subject to an adverse inference instruction at trial. And the district court did not abuse its broad discretion in giving the instruction, as it based its decision on the reasonable conclusion that Harrah's negligently failed to preserve the floor. *See Bass-Davis*, 122 Nev. at 447, 134 P.3d at 106. With Harrah's citing no law requiring Muckridge to inform Harrah's, before trial, of her intent to seek that instruction, we decline to address this issue further. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280,

---

[11]Although Muckridge was aware of the spoliation well before trial, sought no relief in regard to that destruction, and did not mention her intent to seek an adverse inference instruction until the second day of trial, that does not change the analysis here where Harrah's was also on notice of the evidentiary issues.

SUPREME COURT OF NEVADA

(O) 1947A

11

1288 n.38 (2006) (we need not consider arguments not supported by relevant authority).

*Attorney fees award*

Harrah's argues the district court erred by awarding attorney fees. It does not contest the amount of fees awarded but contends that the *Beattie* factors weighed in its favor, and therefore that the district court's decision to award fees was an abuse of discretion. We disagree.

NRCP 68(f) provides that a district court may award attorney fees to an offeror when the "offeree rejects an offer [of judgment] and fails to obtain a more favorable judgment." Before awarding fees, the district court must evaluate: (1) whether the defendant's defense was brought in good faith; (2) whether the offer of judgment was reasonable and brought in good faith in both its timing and amount; (3) whether the defendant's decision to reject the offer was grossly unreasonable or in bad faith; and (4) whether the amount of fees sought were reasonable and justified. *Beattie v. Thomas*, 99 Nev. 579, 588-89, 668 P.3d 268, 274 (1983). "[N]o one factor under Beattie is determinative" and each should be given appropriate consideration. *Yamaha Motor Co. v. Arnoult*, 114 Nev. 233, 252 n.16, 955 P.2d 661, 673 n.16 (1998). And, "[u]nless the trial court's exercise of discretion in evaluating the *Beattie* factors is arbitrary or capricious, this court will not disturb the lower court's ruling on appeal." *Id.* at 251, 955 P.2d at 672.

The district court found the first factor favored Harrah's where Harrah's succeeded on summary judgment for all but one of Muckridge's claims and that Harrah's presented strong evidence during the four-day trial that it did not have notice of the dangerous condition. Next, considering the amount, timing, and motive of the offer to settle, the district

court found the second factor favored Muckridge. With regard to the amount, the district court conducted a mathematical analysis, considering the reasonable provable damages and likelihood of success on the case. The district court found no ill motive behind the offer and considered the timing appropriate where Muckridge served the offer after mediation such that both parties had enough information to evaluate the case. The district court found the third factor also favored Harrah's, as Harrah's had "some defense by which it might have beat the offer of judgment." And that, based on the district court's own evaluation of the case, Harrah's also could have reasonably believed the case was worth less than the offer of judgment. These findings are not an abuse of discretion, as the district court provided detailed and sensible reasoning for each of its conclusions. *See Frazier v. Drake*, 131 Nev. 632, 644, 367 P.3d 365, 373 (Ct. App. 2015) (noting that the first three *Beattie* factors address the parties' good faith in making and responding to the offer of judgment, and implying that those factors should be considered together before considering the reasonableness of the fees requested under the fourth *Beattie* factor); *see also Yamaha Motor*, 114 Nev. at 251, 955 P.2d at 672.

As to the final *Beattie* factor, the district court did not abuse its discretion in finding that the fees Muckridge sought were reasonable and justified. *See Beattie*, 99 Nev. at 589, 668 P.3d at 274. Although the district court did not expressly analyze each of the *Brunzell* factors[12] in its order, we conclude that the record supports a finding that the fees Muckridge

---

[12]The factors are: the qualities of the advocate, the character of the work to be done, the work actually performed, and the result. *Brunzell v. Golden Gate Nat'l Bank*, 85 Nev. 345, 349, 455 P.2d 31, 33 (1969).

requested were reasonable.[13] *See Logan v. Abe*, 131 Nev. 260, 266, 350 P.3d 1139, 1143 (2015) ("While it is preferable for a district court to expressly analyze each factor relating to an award of attorney fees, express findings on each factor are not necessary for a district court to properly exercise its discretion."). Having concluded that the district court did not abuse its discretion in considering any of the *Beattie* factors, we likewise conclude that it did not abuse its discretion in weighing those factors and granting Muckridge's motion for attorney fees and costs.

Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Gibbons

_____, J.
Stiglich

_____, J.
Silver

cc:    Hon. Richard Scotti, District Judge
Kramer, Deboer & Keane
Lemons, Grundy & Eisenberg
Lewis Roca Rothgerber Christie LLP
The702Firm
Eighth District Court Clerk

---

[13]Muckridge requested a lower amount of fees based on a contingency fee calculation, and a higher amount based on a lodestar calculation. The district court awarded, and we only address, the lower contingency fee amount.