**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CARL SCHROEDER, United States
of America, ex. rel.,
            *Plaintiff-Appellant*,

v.

UNITED STATES OF AMERICA,
    *Intervenor Plaintiff-Appellee*,

v.

CH2M HILL; WASHINGTON RIVER
PROTECTION SOLUTION LLC,
            *Defendants*.

No. 13-35479

D.C. No.
2:09-cv-05038-LRS

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Lonny R. Suko, Senior District Judge, Presiding

Argued and Submitted
April 10, 2015—Seattle, Washington

Filed July 16, 2015

Before: Michael Daly Hawkins, Johnnie B. Rawlinson,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Hawkins

## SUMMARY[*]

### False Claims Act

The panel affirmed the district court's dismissal of Carl Schroeder as qui tam relator in a qui tam suit concerning the billing practices of a government contractor.

In an issue of first impression, the panel held that 31 U.S.C. § 3730(d)(3) of the False Claims Act requires the dismissal of a qui tam relator convicted of the conduct giving rise to the fraud, even if the relator only played a minor role.

### COUNSEL

Jackson Schmidt (argued), Pepple Cantu Schmidt PLLC, Seattle, Washington, for Plaintiff-Appellant.

Michael C. Ormsby, United States Attorney, Stuart F. Delery, Assistant Attorney General, Michael S. Rabb and Robert D. Kamenshine (argued), Attorneys, Appellate Staff, Civil Division, Department of Justice, Washington, D.C., for Intervenor Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

HAWKINS, Circuit Judge:

Carl Schroeder ("Schroeder") appeals his dismissal from a qui tam suit concerning the billing practices of government contractor CH2M Hill. The appeal turns on an issue of first impression: Does 31 U.S.C. § 3730(d)(3) of the False Claims Act ("FCA") require the dismissal of a qui tam relator convicted of the conduct giving rise to the fraud, even if he or she only played a minor role? We hold that the statute does require such a relator to be dismissed and affirm the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

Schroeder worked for CH2M Hill, a contractor for the U.S. Department of Energy ("DOE") as a Radiological Control Technician from January 2002 to February 2003 and then again from May 2004 to October 2008. During this time, CH2M Hill engaged in widespread fraudulent billing of hourly work.

Schroeder, like many of his colleagues, submitted false time cards, and, as a result, received at least $50,000 for falsely claimed overtime hours. In April 2008, the DOE Office of Inspector General ("OIG") learned of the time card fraud from an anonymous source and began investigating. OIG investigators interviewed Schroeder's colleagues in November 2008. Several of them were escorted off-site, and supervisors informed employees that the employees were under investigation. Schroeder admitted to over-billing during his December 2008 interview with OIG.

Schroeder contends that he voluntarily approached OIG and did not know he was being investigated at the time. These allegations are not supported by the record, particularly the declaration of the investigation's case agent,  and were rejected by the district court, which found that "[t]he record indicates Mr. Schroeder did not approach investigators on his own initiative."

As a result of the investigation, the government filed an information against Schroeder in September 2011, and he pled guilty to one felony count of conspiracy to commit fraud.  The terms of the plea included a pledge to provide substantial assistance to the government, two years of supervised release, and a fine of $50,000.

In June 2009, after the initial interviews but prior to the filing of charges, Schroeder filed a complaint against CH2M Hill.  Schroeder's qui tam suit proceeded contemporaneously with the government's investigation.[1]   The United States intervened in August 2012, and shortly thereafter moved to dismiss Schroeder as a relator based on his felony conviction.

The  district  court  concluded  that  the  statute  is unambiguous and "requires dismissal from the action of a person who has been convicted of criminal conduct arising

---

[1] "Under 31 U.S.C. § 3730, a 'qui tam plaintiff,' also known as a 'relator,' may bring a civil action for a violation of the FCA for herself and for the United States government, in the name of the government." *United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1011 n.2 (9th Cir. 2006).  Depending on the relator's contribution to the prosecution of the action and whether the government intervenes, a relator may receive up to thirty percent of the proceeds of the action or resulting settlement. *See* 31 U.S.C. §§ 3730(d)(1)–(2).

from his role" in the fraud that is the basis of his qui tam action. Schroeder timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

Because the district court's dismissal was a final decision disposing of all claims, we have jurisdiction under 28 U.S.C. § 1291(a). The sole issue involves the district court's interpretation of federal law, which is reviewed de novo. *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1131 (9th Cir. 2009).

## ANALYSIS

Section 3730(d)(3) of Title 31 of the United States Code provides, in full:

> Whether or not the Government proceeds with the action, if the court finds that the action was brought by a person who planned and initiated the violation of section 3729 upon which the action was brought, then the court may, to the extent the court considers appropriate, reduce the share of the proceeds of the action which the person would otherwise receive under paragraph (1) or (2) of this subsection, taking into account the role of that person in advancing the case to litigation and any relevant circumstances pertaining to the violation. *If the person bringing the action is convicted of criminal conduct arising from his or her role in the violation of section 3729, that person shall be dismissed from the civil action and shall not receive any share of the proceeds of the*

*action.*  Such dismissal shall not prejudice the
right of the United States to continue the
action, represented by the Department of
Justice.

31 U.S.C. § 3730(d)(3) (emphasis added).

The only dispute is whether the second sentence in this
subsection requires the dismissal of all relators convicted of
criminal conduct arising from the fraudulent conduct at issue
in the qui tam suit, particularly minor participants who
neither planned nor initiated the fraudulent scheme.  The
parties do not dispute the ordinary meaning of these words,
and several courts have concluded that the provision is
mandatory.  *See Roberts v. Accenture, LLP*, 707 F.3d 1011,
1016 (8th Cir. 2013); *U.S. ex rel. Taxpayers Against Fraud v.
Gen. Elec. Co.*, 41 F.3d 1032, 1035 (6th Cir. 1994); *U.S. ex
rel. Green v. Serv. Contract Educ. & Training Trust Fund*,
843 F. Supp. 2d 20, 28 n.6 (D.D.C. 2012).

It is well established that the "starting point in discerning
congressional intent is the existing statutory text" and that
"when the statute's language is plain, the sole function of the
courts—at least where the disposition required by the text is
not absurd—is to enforce it according to its terms." *Lamie v.
U.S. Tr.*, 540 U.S. 526, 534 (2004) (citations and internal
quotation marks omitted); *see also McDonald v. Checks-N-
Advance, Inc. (In re Ferrell)*, 539 F.3d 1186, 1190 n.10 (9th
Cir. 2008) ("If the statutory language is unambiguous and the
statutory scheme is 'coherent and consistent,' '[o]ur inquiry
must cease.'" (quoting *Robinson v. Shell Oil*, 519 U.S. 337,
340 (1997))).

Despite this plain language, our inquiry does not cease here, because Schroeder argues that requiring the dismissal of convicted relators who played a minor role in a fraud would make the statutory scheme logically inconsistent and produce an absurd result. We disagree with both components of the argument. Applying the statute to minor participants in a fraud does not produce an absurd or unreasonable result. The provision states that "[i]f the person bringing the action is convicted of criminal conduct arising from his or her role in the violation of section 3729, that person shall be dismissed from the civil action and shall not receive any share of the proceeds of the action." 31 U.S.C. § 3730(d)(3). It does not contain an exception for minor participants, and the statute does not indicate that it does not apply to relators like Schroeder.

Schroeder contends that when this provision is read in conjunction with the preceding clause, the statute produces the absurd and logically inconsistent result of allowing the most culpable fraud participants (planners and initiators) to collect a reduced share of an award but bars less culpable fraud participants (minor participants convicted of the offense) from recovery altogether. While the two clauses might not perfectly harmonize relator eligibility and awards with culpability, no authority suggests that the provision should be construed according to that criteria. As such, the argument urges us to untenably assume the role of a "'superlegislature' second-guessing the policy choices of the other branches of government." *Christian Sci. Reading Room Jointly Maintained v. City & Cnty. of S.F.*, 807 F.2d 1466, 1467 (9th Cir. 1986) (Norris, J., dissenting).

Furthermore, the relator award hierarchy chosen by Congress may satisfy other values, such as the deterrent effect

of preventing criminally culpable individuals from gaining from their conduct, and the investigatory benefits of actions brought by planners and initiators who often have greater knowledge about co-conspirators and the scope of a fraudulent scheme. Lastly, the dichotomy drawn by Schroeder is a false one, as the statute also requires courts to dismiss planners and initiators convicted of fraud.

Schroeder's next argument, that applying § 3730(d) to minor fraud participants undermines the FCA's purpose of encouraging qui tam plaintiffs to help uncover fraud, is unpersuasive for at least two reasons. First, we may not even need to consider the statute's purpose because "[t]here is no need to look beyond the plain meaning in order to derive the purpose of the statute . . . [a]t least there is no need to do so when the result is not absurd." *Tang v. Reno*, 77 F.3d 1194, 1196–97 (9th Cir. 1996) (citations and internal quotation marks omitted). Second, regardless, analyzing the statute's purpose only verifies that we should not deviate from the plain meaning.

The text of the statute leaves little doubt that the sole purpose of the 1988 amendment that codified § 3730(d)(3) was to restrict eligibility and reduce rewards for certain relators. The only two elements of the amendment reduce awards for relators who "planned and initiated" the fraud and require dismissal of relators "convicted of criminal conduct" arising from the violation. Schroeder's dismissal fulfills one of the two elements and is consistent with the statute's purpose.

While the purpose of the Act, as amended in 1986, was to strengthen the federal government's ability to "recover losses sustained as a result of fraud" in large part by encouraging

qui tam suits, S. Rep. No. 99-345, at 1–2 (1986), a broad congressional purpose is of limited value when the meaning is plain and the general purpose is inconsistent with the purpose of the particular provision.[2] Further, enacting a modest amendment restricting relator eligibility merely two years after embracing qui tam suits is consistent with Congress's attempt to find a balance between "deterring parasitic claims [and] fostering productive suits." *See* Christopher M. Alexion, *Open the Door, Not the Floodgates: Controlling Qui Tam Litigation Under the False Claims Act*, 69 Wash. & Lee L. Rev. 365, 378, 403 (2012); *see also U.S. ex rel. Findley v. FPC-Boron Emps.' Club*, 105 F.3d 675, 680 (D.C. Cir. 1997), *abrogated on other grounds by Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007) (Act ricocheted between "extreme permissiveness" and "extreme restrictiveness").

---

[2] A colorable policy argument cautions that applying the statute to minor participants convicted of fraud will alter the mix of incentives that encourage qui tam plaintiffs to file suit. We are not insensitive to the surge in recoveries of misused public funds that has flowed from the 1986 legislation. *See* Press Release, Department of Justice, Justice Department Recovers Nearly $6 Billion from False Claims Act Cases in Fiscal Year 2014 (Nov. 20, 2014), http://www.justice.gov/opa/pr/justice-department-recovers-nearly-6-billion-false-claims-act-cases-fiscal-year-2014 (last visited Apr. 29, 2015). Nor do we ignore the original Act's sponsor that "setting a rogue to catch a rogue . . . is the safest and most expeditious way I have ever discovered of bringing rogues to justice," Cong. Globe, 37th Cong., 3d Sess. 955–56 (1863) (statement of Sen. Howard), or the commonsense notion that bounty programs may depend in part on the participation of co-conspirators or minor fraud participants. Yet, our duty is to ascertain the intent of the legislature, and not to legislate, which is what the policy argument asks of us. Congress could have allowed minor participants convicted of fraud to be qui tam plaintiffs, but the statute does not allow us to create such an exception.

The last argument for an alternative interpretation of the statute is one that Schroeder did not present, yet could constitute the most persuasive evidence in support of a second interpretation of the statute. *See Chickasaw Nation v. United States*, 534 U.S. 84, 90 (2001). Close scrutiny of the provision's grammar and structure *might* indicate that the "criminal conduct" clause is modified by, or operates in concert with, the "plan/initiate" clause, such that a court may reduce a planner's award and shall dismiss a planner convicted of criminal conduct. This interpretation would not result in surplusage and would give effect to each part of the statute. Two related points suggest that Congress might have intended the first clause to modify the second.

First, the two clauses rest within a single subparagraph of text, indicating that Congress might have meant for them to function together. *See generally Grogan v. Garner*, 498 U.S. 279, 287–88 (1991). Second, more importantly, the two clauses describe relators using different articles. In *Gale v. First Franklin Loan Services*, 701 F.3d 1240, 1246 (9th Cir. 2012), we determined that the use of a definite article preceded by an indefinite article can be persuasive evidence that Congress intended to link two clauses. There, in a closely analogous interpretive scenario, our scrutiny of two separate clauses within a single subsection, the first preceded by an indefinite article and the second by a definite article ("a servicer" and "the servicer"), yielded an interpretation that "[t]he use of the definite article in referring to the servicer only makes sense by reference to the preceding sentence." *Gale*, 701 F.3d at 1246.

Similarly, the first clause of § 3730(d)(3) states that a court may reduce the share of a suit "brought by *a person* who planned and initiated the violation" and the following

clause that "[i]f *the person* bringing the action" is convicted, the court shall dismiss him. 31 U.S.C. § 3730(d)(3) (emphasis added). As in *Gale*, the use of a definite article in the second clause could indicate that it refers to the "person" described in the first clause. Otherwise, the statute would have provided that "if a person" or "if any person" bringing the action is convicted, the court shall dismiss him. *See generally Work v. U.S. ex rel. McAlester-Edwards Coal Co.*, 262 U.S. 200, 208 (1923); *Am. Bus Ass'n v. Slater*, 231 F.3d 1, 4–5 (D.C. Cir. 2000).

The structure and grammar of the text, in light of our decision in *Gale*, narrowly permits a second plausible interpretation, *see Robinson*, 519 U.S. at 341 ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."), which complements Schroeder's arguments that Congress did not intend for courts to dismiss all minor fraud participants as relators. Yet, the more persuasive reading of the statute, given its plain language, logical harmony, and consistency with the purpose of the 1988 amendment, is that "Congress said what it meant and meant when it said." *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992). Thus, we need not reach the legislative history of § 3730(d)(3). However, even if we look to the legislative history, Schroeder's argument is not persuasive.

When a statute is susceptible to two or more meanings, we may consider legislative history. *See, e.g.*, *N. Cal. River Watch v. Wilcox*, 633 F.3d 766, 773 (9th Cir. 2011) ("If the proper interpretation is not clear from this textual analysis, the legislative history offers valuable guidance and insight

into Congressional intent.") (citation and internal quotation marks omitted).  But, "the plainer the language, the more convincing contrary legislative history must be."  *Church of Scientology of Cal. v. U.S. Dep't of Justice*, 612 F.2d 417, 422 (9th Cir. 1979).  In this case, the legislative history of § 3730(d)(3) does not provide useful guidance as to congressional intent, nor does it constitute "convincing" evidence that overcomes the statute's plain language.

The legislative history provides some support for Schroeder's position.  The two Senators that discussed the provision indicated that it only applies in narrow circumstances and does not cover minor participants.[3]  *See* 134 Cong. Rec. S16697-01 (Sen. DeConcini) ("I am confident that the vast majority of private plaintiffs in false claims actions will not be affected by this amendment because they are not the driving force behind the false claims activities disclosed in their lawsuits."); *id.* (Sen. Grassley) ("This amendment is intended to apply narrowly to principal wrongdoers, such as those convicted of criminal misconduct, and not to those qui tam plaintiffs who may have had some more minor role in the false claims conduct.").

Yet, the legislative history does not constitute convincing evidence that Congress meant to exclude convicted minor fraud participants because both Senators suggested that the two clauses operate independently.  Neither expressed that

---

[3] The legislative history is limited, consisting in its entirety of four floor statements.  The clause is not mentioned in any committee report, conference report, or committee hearing. *See, e.g.*, S. Rep. No. 100-503 (1988); H.R. Rep. No. 100-610 (1988).  The two House Members that discussed the amendment did not address the criminal conviction clause. *See* 134 Cong. Rec. H10637-41 (Rep. Hughes); 134 Cong. Rec. H10637-02 (Rep. Berman).

minor fraud participants are not covered by the criminal conduct provision or that the first clause modifies the second. In addition, contrary to the strongest textual support for an interpretation deviating from the plain meaning, both Senators describe the "criminal conduct" clause with an *indefinite* article and as applying in "*any case.*" Senator DeConcini stated:

> The amendment offered today provides that in an extreme case where the private plaintiff was a principal architect of a scheme to defraud the Government, that plaintiff would not be entitled to any minimum guaranteed share of the proceeds of the action. Also, in any case where a private plaintiff is convicted of criminal misconduct for his or her role in the false claims practice, the private plaintiff will be dismissed from the action and not entitled to any recovery.

*Id.* Similarly, Senator Grassley stated:

> My amendment simply clarifies that in an extreme case where the qui tam plaintiff was a principal architect of a scheme to defraud the Government, that plaintiff would not be entitled to any minimum guaranteed share of the proceeds of the action. And in any case where a qui tam plaintiff is convicted of criminal misconduct for his or her role in the false claims practice, the qui tam plaintiff

> must be dismissed from the action and is
> entitled to zero recovery.

*Id.*

Thus, while the legislative history provides some support for the notion that the sponsors did not intend for the provision to require the dismissal of minor fraud participants, it is not convincing enough to warrant departing from the plain meaning. The legislative history's inconsistency limits its value. It provides that "in any case where a qui tam plaintiff is convicted . . . [he] must be dismissed," but that the amendment is not intended to apply to "those qui tam plaintiffs who may have had some more minor role in the false claims conduct." 134 Cong. Rec. S16697-01. This evidence does not warrant a departure from the plain meaning. *See Chamber of Commerce of U.S. v. Whiting*, 131 S. Ct. 1968, 1980 (2011) (Roberts, C.J.) ("Congress's 'authoritative statement is the statutory text, not the legislative history.'" (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005))).

## CONCLUSION

We affirm the district court's dismissal of Schroeder as a qui tam relator. The grammar and structure of the provision narrowly supports a second plausible interpretation. However, the text does not include an exception for minor fraud participants, and our interpretation is consistent with the particular purpose of the 1988 amendment. The legislative history is too inconclusive to warrant departing from the plain meaning.

**AFFIRMED.**