**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

DARREL KING,
*Defendant-Appellant.*

No. 21-10002

D.C. Nos.
3:81-cr-00311-RS-1
3:81-cr-00311-RS

OPINION

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, Chief District Judge, Presiding

Argued and Submitted January 11, 2022
San Francisco, California

Filed January 25, 2022

Before: Ronald M. Gould, Mark J. Bennett, and
Ryan D. Nelson, Circuit Judges.

Opinion by Judge Gould

## SUMMARY[*]

### Criminal

Affirming the district court's denial of a motion for compassionate release filed pursuant to the First Step Act of 2018 (FSA), the panel held that inmates who committed crimes before November 1, 1987, cannot move for compassionate release pursuant to 18 U.S.C. § 3582(c)(1), as amended by the FSA; these prisoners are instead subject to the Sentencing Reform Act of 1984 and can gain compassionate release only if the Bureau of Prisons requests it on the prisoner's behalf under 18 U.S.C. § 4205(g).

### COUNSEL

Erik G. Babcock (argued), Law Offices of Erik G. Babcock, Oakland, California, for Defendant-Appellant.

Matthew M. Yelovich (argued), Chief, Appellate Section, Criminal Division; Scott D. Joiner, Assistant United States Attorney; Stephanie M. Hinds, Acting United States Attorney; United States Attorney's Office, San Francisco, California; for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

GOULD, Circuit Judge:

Defendant-Appellant Darrel King appeals from the district court's denial of the motion for compassionate release he filed pursuant to the First Step Act (FSA), Pub. L. No. 115-391, 132 Stat. 5194 (2018). We have jurisdiction under 28 U.S.C. § 1291, and we affirm. Following the decision of the Seventh Circuit in *United States v. Jackson*, 991 F.3d 851 (7th Cir. 2021), we hold that inmates who committed crimes before November 1, 1987, cannot move for compassionate release pursuant to 18 U.S.C. § 3582(c)(1), as amended by the FSA. These prisoners are instead subject to the Sentencing Reform Act (SRA), Pub. L. No. 98-473, 98 Stat. 1837 (1984) and can gain compassionate release only if the Bureau of Prisons (BOP) requests it on the prisoner's behalf under 18 U.S.C. § 4205(g).

## I. FACTUAL AND PROCEDURAL BACKGROUND

King ran a heroin distribution ring focusing on San Francisco housing projects between 1976 and 1980. California authorities arrested King in 1980 and charged him with first-degree murder and firearms crimes. King was convicted of these offenses in California state court in 1981 and was sentenced to serve twenty-seven years to life in prison. Later that same year, King was convicted of federal drug trafficking crimes and was sentenced to forty-five years of incarceration in 1982. King began serving his federal sentence in 2019 after completing his separate California sentence. Shortly thereafter, King directly filed a motion for compassionate release pursuant to § 3582(c)(1). His motion urged that compassionate release was appropriate because he is seventy-seven years old, highly vulnerable to COVID-19

while incarcerated in federal prison, and has a wife who is struggling with cancer. The district court denied this motion as procedurally improper because it had been filed by King, and he timely appealed.

## II.  STANDARDS OF REVIEW

We review *de novo* issues of statutory construction. *United States v. Carey*, 929 F.3d 1092, 1096 (9th Cir. 2019).

## III.  DISCUSSION

### A.

District courts can modify prison sentences only in limited circumstances set out by federal statute. *See Dillon v. United States*, 560 U.S. 817, 824 (2010).  Section 3582(c)(1), as amended by the FSA, allows certain inmates to seek a form of sentence modification called compassionate release by filing motions to that effect with the district court.  *See* 18 U.S.C. § 3582(c)(1); FSA § 603(b)(1) (adding "upon motion of the defendant" to the statutory text).  But not all prisoners are permitted to personally file such motions for compassionate release under the express terms of § 3582(c)(1).

From 1976 to 1984, § 4205(g) defined the procedures through which inmates could gain compassionate release. Under the statute, a prisoner was not allowed to directly request compassionate release by filing a motion in district court.  Only the BOP could seek such relief on behalf of the inmate.  The SRA repealed § 4205(g) in 1984 and replaced it with § 3582(c)(1), effective on November 1, 1987.  *See* SRA § 227; Sentencing Reform Amendments Act of 1985, Pub. L. No. 99-217 § 4, 99 Stat. 1728 (1985) (finalizing the effective date of the SRA).  An amendment to the SRA

established that § 3582(c)(1) only applies to prisoners who offended on or after November 1, 1987, and inmates who committed crimes on or before October 31, 1987, remain subject to § 4205(g) and cannot themselves file a motion for compassionate release. *See* SRA § 227; Sentencing Act of 1987, Pub. L. No. 100-182 § 2(a), 101 Stat. 1266 (1987) (inserting "shall apply only to offenses committed after the taking effect of this chapter" into the text of § 3582(c)(1)); *accord Jackson*, 991 F.3d at 854. As summarized by regulations on compassionate release, "18 U.S.C. 4205(g) was repealed effective November 1, 1987, but remains the controlling law for inmates whose offenses occurred prior to that date [(called 'old law' prisoners)]. For inmates whose offenses occurred on or after November 1, 1987, [('new law' prisoners)], the applicable statute is 18 U.S.C. 3582(c)(1)(A)." 28 C.F.R. § 572.40 (2021).

The literal language of the pertinent statutes' text left this dual-regime structure in place for five years. *See* SRA § 235(b)(1)(A) (leaving Chapter 311 of 18 U.S.C., which includes § 4205(g), in place for pre-SRA offenders "for five years after the effective date" of SRA). But the district court appropriately noted that this structure by renewals has since acquired a state of permanent impermanence. In October 2020, or roughly two years after the FSA was enacted and one month before King moved for compassionate release, Congress kept § 4205(g) alive for the tenth time, and it now continues to control compassionate release procedures for pre-SRA inmates through 2022. *See* United States Parole Commission Extension Act of 2020 (PCE Act), Pub. L. No. 116-519 § 4202, 134 Stat. 709, 741 (2020).

For these reasons, prisoners who, like King, stand convicted of crimes that predate November 1, 1987, are subject to § 4205(g) and cannot personally move a district

court for compassionate release. *Jackson*, 991 F.3d at 854. The district court here correctly denied King's procedurally improper motion for compassionate release on this basis. *See id.*

## B.

King urges us to reach the opposite conclusion on the ground that the phrase "in any case" within § 3582(c)(1) defines the scope of that statute more broadly. Alternatively, he points to extrinsic evidence including reports by the Office of the Inspector General (OIG) and the Sentencing Commission, letters from senators, and draft legislation proposed after the FSA was enacted. King contends that these materials show that the FSA implicitly repealed the SRA's November 1, 1987, cut-off date such that § 3582(c)(1) is now universally applicable. We address these contentions below.

## i.

The FSA amended § 3582(c)(1) by allowing certain inmates to directly seek compassionate release, and this path to relief applies "in any case." King argues this language indicates that all pre-November 1, 1987, offenses are now subject to § 3582(c)(1). He is incorrect because the FSA did not alter the two-track regime under which old law prisoners are subject to § 4205(g) and new law inmates have access to § 3582(c)(1).

As explained persuasively by the Seventh Circuit, the phrase "in any case" has been part of § 3582(c)(1) since it became law in 1984. *Jackson*, 991 F.3d at 853. The FSA also "provides that § 3582(c)(1)(A) is being amended, not that § 3582 as a whole is being repealed and a new statute with the same section number enacted." *Id.* (citing FSA

§ 603(b)(1)). As a result, the FSA "did not modify the transition language from 1984 and 1987" that limits the scope of § 3582(c)(1) to inmates who committed their crimes on or after November 1, 1987. *Id*. Notwithstanding the FSA, § 3582(c)(1) remains unavailable to prisoners convicted of crimes that occurred on or before October 31, 1987. *Id*. at 854. This conclusion not only makes sense based on the express statutory language, but also is reinforced when we consider Congress' recent extension of the applicability of § 4205(g) to these inmates through 2022. *See* PCE Act § 4202; *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (cleaned up)).

King raises another argument in support of his contention that the "in any case" language in § 3582(c)(1) controls its applicability. He stresses that only one part of the FSA, specifically the subsection that amended § 3624(g), has its own transition clause. This transition clause explains that the FSA's amendments to § 3624(g) "apply with respect to offenses committed before, on, or after the date of enactment of this Act, except that such amendments shall not apply with respect to offenses committed before November 1, 1987." FSA § 102(b)(3). King contends that the fact "Congress explicitly made [an] old-law/new-law distinction with respect to [FSA] § 102, but did not do so in § 603 [of the FSA] and instead chose the 'in any case' language [shows] that Congress did not intend an unwritten carve-out to its reform of compassionate release." When the Seventh Circuit confronted a similar argument in *Jackson*, it explained that the appellant there had theorized that "by reiterating in § 102(b)(3) that § 3624—which like § 3582 was part of the [SRA]—does not apply to people whose

crimes predate November 1, 1987, the [FSA] made all of its other changes universally applicable." *Jackson*, 991 F.3d at 853.

The Seventh Circuit squarely rejected that argument as a *non-sequitur, id.*, and we conclude likewise when faced with this argument from King. "The 'except' clause in § 102(b)(3) is necessary to prevent the preceding language— which declares that the [FSA's] changes to § 3624(g) are fully retroactive—from reaching beyond the scope of § 3624(g) itself, which does not apply to older offenses." *Id*. Congress has revised § 3624(g) several times since 1984, and its amendment history establishes "that transition language has been a routine part of these amendments, so that each change applies to the proper set of cases. The inclusion of transition language in § 102(b)(3) of the [FSA] is of a kind with these earlier provisions." *Id*. at 853–54. And nothing in this transition language indicates "some *other* part of the [SRA, such as § 3582(c)(1)] has suddenly become applicable to older crimes." *Id*. at 854.

### ii.

King cites OIG and Sentencing Commission reports, letters by senators, and legislation proposed after the FSA was enacted, as evidence that § 3582(c)(1) is now universally applicable. This extrinsic evidence is not persuasive considering the clear statutory scheme at issue here.

In resolving "statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself. Where, as here, that examination yields a clear answer, judges must stop." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) (citations omitted). In such contexts, "the

sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Schroeder v. United States*, 793 F.3d 1080, 1083 (9th Cir. 2015) (citation omitted). If federal courts "could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and [their] own imaginations, [they] would risk amending statutes outside the legislative process . . . ." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1738 (2020). Such extrinsic evidence may only be considered when necessary to resolve a statutory ambiguity. *See McGirt v. Oklahoma*, 140 S. Ct. 2452, 2469 (2020) ("There is no need to consult extratextual sources when the meaning of a statute's terms is clear. Nor may extratextual sources overcome those terms. The only role such materials can properly play is to help clear up[,] not create[,] ambiguity about a statute's original meaning." (cleaned up)).

Here, there is no ambiguity whatsoever within the statutory scheme for compassionate release procedures. Nor does King identify any. The law is clear. Section 3582 only extends to prisoners who offended on or after November 1, 1987. *See* SRA § 227, *as amended by* § 4 of the Sentencing Reform Amendments Act of 1985 (finalizing the effective date of SRA) *and* § 2(a) of the Sentencing Act of 1987 (adding "shall apply only to offenses committed after the taking effect of this chapter" to the statute). It is also clear that the FSA's revisions to § 3582(c)(1) do not apply to § 4205(g) and the old law inmates who are subject to it. *See* FSA § 603(b)(1); *Jackson*, 991 F.3d at 853.

King nevertheless argues that it is absurd to read § 3582(c) as affording pre-November 1, 1987, offenders less access to compassionate release than prisoners who committed their crimes on or after this date. He claims this

will defeat Congress' intent to increase use of compassionate release as pre-November 1, 1987, offenders are more likely to be elderly inmates who have been incarcerated for a long time. We disagree.

Granting prisoners who committed their crimes on or after November 1, 1987, more access to compassionate release than prisoners who offended before this date is not an absurdity requiring disregard of a clear statutory scheme. *Schroeder*, 793 F.3d at 1083. There is a rational reason for this cut-off date. Unlike new law inmates, old law prisoners can still secure early release through the parole system. While the SRA replaced parole with supervised release, this regime change is not retroactive and parole remains available to inmates who committed crimes on or before October 31, 1987. *See Jackson*, 991 F.3d at 852–53. That old law inmates have early release avenues beyond compassionate release substantially undercuts King's position that application of § 4205(g) to pre-November 1, 1987, offenders is absurd such that the plain language of the statutory scheme that prescribes compassionate release procedures should not control. *See Dodd v. United States*, 545 U.S. 353, 359 (2005); *Schroeder*, 793 F.3d at 1083.

King further contends that extrinsic evidence clearly establishes that Congress meant something other than what it said in making § 3582(c)(1) inapplicable to old law prisoners who committed crimes on or before October 31, 1987. We reject this argument because of the lack of any ambiguity in the statutory terms. *See McGirt*, 140 S. Ct. at 2469.

In addition, King contends that his OIG and Sentencing Commission reports, letters written by senators, and draft legislation proposed two years after the FSA, establish that the FSA implicitly repealed § 3582(c)(1)'s November 1,

1987, effective date. We reject this contention. "[R]epeals by implication are not favored and are a rarity. Presented with two statutes, the Court will regard each as effective—unless Congress' intention to repeal is clear and manifest or the two laws are irreconcilable" in some way. *Me. Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1323 (2020) (cleaned up). An intent to repeal is not clear and manifest here.

King argues that his OIG and Sentencing Commission reports establish that "[t]he context and impetus for the new amendments in the [FSA] had to do with the utter refusal of the BOP over the past decades since the [SRA] to give any real effect to the purposes of compassionate release." The simple answer is that Congress has extended the applicability of § 4205(g) to old law prisoners until 2022. *See* PCE Act § 4202.

Draft legislation on which King relies would make § 3582(c)(1) applicable in any case "involving an offense committed before November 1, 1987." COVID-19 Safer Detention Act, S. 4034, 116th Cong. § 4(1)(A) (2020). But we cannot rely upon unenacted bills to modify an existing statute, as that is a function of Congress. Moreover, the proposed bill post-dates the FSA by two years and cannot possibly be evidence that the FSA implicitly made § 3582(c)(1) accessible to old law inmates when Congress last spoke on the issue in 2018. The United States Supreme Court has made this clear: "Post-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation [since it] by definition could have had no effect on the congressional vote." *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011) (cleaned up); *see also Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117 (1980).

Because the statutory scheme governing compassionate release procedures is unmistakably clear that prisoners who offended before November 1, 1987, cannot personally move for compassionate release under § 3582(c)(1), and there is neither ambiguity nor absurdity in what Congress has said, we may not consider King's extrinsic evidence. *See Food Mktg. Inst.*, 139 S. Ct. at 2364. The unambiguous statutory text controls and we go no further in deciding this case. *See id*.[1]

## IV.  CONCLUSION

King is subject to § 4205(g) and the BOP has not yet sought compassionate release on his behalf. The judgment of the district court correctly applied this statute.

**AFFIRMED.**

---

[1] We note that we rejected several of King's arguments in *United States v. Matta-Ballesteros*, 843 F. App'x 892, 892–94 (9th Cir Feb. 12, 2021).