*United States v. Coonan*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2024

(Argued:   May 16, 2025     Decided:   July 9, 2025)

Docket No. 24-2119

UNITED STATES OF AMERICA,

*Appellee,*

–v.–

JAMES COONAN,

*Defendant-Appellant,*

KEVIN KELLY, JAMES MCELROY, KENNETH SHANNON, WILLIAM BOKUM, JOHN HALO, EDNA COONAN, RICHARD RITTER, FLORENCE COLLINS, THOMAS COLLINS,

*Defendants.*[*]

Before:     LYNCH, PARK, and ROBINSON, *Circuit Judges.*

---

[*]   The Clerk of Court is respectfully directed to amend the caption on this Court's docket to be consistent with the caption on this opinion.

Appellant James Coonan appeals from an order of the United States District Court for the Southern District of New York (Gardephe, *J.*) denying his motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1). Coonan has been serving a lengthy prison sentence for crimes committed between the mid-1960s and the mid-1980s.

The Sentencing Reform Act of 1984, including the provision codified at 18 U.S.C. § 3582(c)(1), is inapplicable in cases that arise from conduct occurring before November 1, 1987. The First Step Act of 2018 changed some aspects of § 3582(c)(1) but did not change the Sentencing Reform Act's limitations on the applicability of § 3582(c)(1). So Coonan is ineligible for relief under 18 U.S.C. § 3582(c)(1). Accordingly, we AFFIRM.

---

JERRY J. FANG (Michael D. Maiman, *on the brief*), Assistant United States Attorneys, *for* Danielle R. Sassoon, United States Attorney for the Southern District of New York, New York, NY.

ANGELA D. LIPSMAN (Joseph R. Corozzo, *on the brief*), Rubinstein & Corozzo, LLP, New York, NY, *for Defendant-Appellant*.

---

ROBINSON, *Circuit Judge*:

Appellant James Coonan appeals from an order of the United States District Court for the Southern District of New York (Gardephe, *J.*) denying his motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1).[1] Coonan's appeal presents

---

[1] Such motions are sometimes colloquially identified as "compassionate release" motions. We have recognized that this term is a misnomer, as the statute allows for sentence *reductions*, and not simply release. *See United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). We treat the terms "compassionate release" and "sentence reduction" as interchangeable and primarily use the latter term that more precisely reflects the scope of the statute.

a single, narrow question: Whether inmates serving federal prison time for conduct that occurred prior to November 1, 1987, may seek a sentence reduction under 18 U.S.C. § 3582(c)(1), as amended by the First Step Act of 2018. We hold that they may not and **AFFIRM**.

## BACKGROUND

Appellant James Coonan was once the leader of the "Westies," an Irish-American gang active in the Hell's Kitchen neighborhood of Manhattan between the mid-1960s and the mid-1980s. Coonan and the Westies profited from illegal loansharking, extortion, gambling, counterfeiting, and narcotics, and they protected their power and influence through violence, including murder. The United States government indicted Coonan and nine co-defendants on September 17, 1987, for (among other things) participating and conspiring to participate in a racketeering enterprise in violation of 18 U.S.C. § 1962. At trial, a jury convicted Coonan of ten charges and acquitted on one. Taking into account mandatory consecutive terms of imprisonment, the district court imposed a total sentence of 75 years. Coonan has now served approximately 38 years.

Over the course of his time in prison, Coonan has appeared at least three times before the United States Parole Commission to request parole: in 2012, 2021, and 2023. The Parole Commission has never granted Coonan parole. According

to the Bureau of Prisons, Coonan is projected to be released on mandatory release on June 1, 2030.

Separate from the parole process, Coonan asked the Bureau of Prisons ("BOP") to file a sentence reduction motion on his behalf in December 2020, several years before Coonan filed his own § 3582(c)(1) motion at the heart of this case. The BOP denied Coonan's request and his administrative appeal of that denial.

In August 2023, Coonan filed his own motion seeking a sentence reduction pursuant to § 3582(c)(1)(A) in the United States District Court for the Southern District of New York. The district court denied Coonan's motion on the ground that Coonan could not move for compassionate release under § 3582(c)(1). *United States v. Coonan*, No. 87-CR-249, 2024 WL 3567520, at *3–4 (S.D.N.Y. June 26, 2024). The district court explained that § 3582 is a component of the Sentencing Reform Act of 1984, and the sentencing reforms in that statute apply only to sentences arising from offenses committed on or after November 1, 1987. *Id.* The court concluded that inmates like Coonan, who committed their offenses before November 1, 1987, cannot seek a sentence reduction under § 3582(c)(1), even after that section was amended in 2018 to give inmates the right to bring their own § 3582 motions. *Id.* at *4–5. Coonan timely appealed the district court's order.

## DISCUSSION

We have jurisdiction to review the district court's final order denying compassionate release. *See* 28 U.S.C. § 1291. Generally, "[w]e review the denial of a motion for compassionate release for abuse of discretion," but we review "underlying matters of statutory interpretation" without any deference to the district court's reasoning. *United States v. Halvon*, 26 F.4th 566, 569 (2d Cir. 2022).[2]

Coonan seeks a sentence reduction pursuant to § 3582(c)(1), which says:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant [after exhausting administrative remedies], may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1) (as amended). The pivotal question in this case is whether § 3582(c)(1) applies in Coonan's case.

Coonan says yes. He emphasizes that the statute specifically says that a court may reduce the term of imprisonment upon motion of the defendant "in any case." And he contends that we should adopt his interpretation to avoid

---

[2] In quotations from caselaw and the parties' briefing, this opinion omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

potential constitutional questions that an alternative reading would raise. The district court said no. Because § 3582 is part of a broader law that does not apply to sentences imposed for crimes committed before November 1, 1987, the court concluded that Coonan cannot rely on the sentence reduction provision. Our analysis of these competing arguments focuses on the two acts of Congress that shaped § 3582(c)(1)(A): the Sentencing Reform Act of 1984 ("SRA"), and the First Step Act of 2018 ("FSA"). We consider each in turn.

## I.    Sentencing Reform Act of 1987

We start with the SRA because it gave birth to § 3582. The SRA added a new chapter to the United States Code, comprehensively overhauling federal law governing sentencing and incarceration. *See generally Mistretta v. United States*, 488 U.S. 361, 367–68 (1989) (cataloguing ways that the SRA changed federal sentencing laws); *see also United States v. Booker*, 543 U.S. 220, 292–98 (2005) (Stevens, J., dissenting in part) (same). Among other things, the SRA prospectively abolished the Parole Commission that had previously administered the system for considering applications for parole, instead providing a mechanism for judicial review of requests for sentence reductions in future cases. That

6

mechanism is set forth in part at § 3582(c)(1)(A)—the provision at issue in this case.

As enacted in 1984, it read:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Sentencing Reform Act ("SRA") of 1984, Pub. L. No. 98-473, ch. II, sec. 212(a)(2), § 3582(c)(1), 98 Stat. 1987, 1998–99 (1984) (enacting 18 U.S.C. § 3582).  Pursuant to this provision, the sentencing court, rather than the Parole Commission, had the power to reduce a sentence, and it could exercise that authority *upon motion of the Director of the Bureau of Prisons*.  18 U.S.C. § 3582(c)(1)(A) (1984).

As to the applicability of this new regime, the SRA's general effective date provision, as subsequently amended, provides:

> This chapter shall take effect on the first day of the first calendar month beginning 36 months after the date of enactment and shall apply only to offenses committed after the taking effect of this chapter[.]

SRA § 235(a)(1), 98 Stat. at 2031, *as amended by* Sentencing Reform Amendments Act of 1985, Pub. L. 99-217, § 4, 99 Stat. 1728 (1985) (extending the effective date from roughly 24 to roughly 36 months after the date of enactment), *and* Sentencing

7

Act of 1987, Pub. L. 100-182, § 2(a), 101 Stat. 1266 (1987) (adding language to specify that the SRA "shall apply only to offenses committed after the taking effect of this chapter").[3]

"This chapter" refers to the SRA, embodied in Chapter II of Title II of Public Law 98–473, and encompasses § 3582.   *See* SRA § 211, 98 Stat. at 1987.   And because the SRA became law on October 12, 1984, no one here disputes that "the first day of the first calendar month beginning 36 months after the date of enactment" of the SRA is November 1, 1987.   When we translate § 235(a)(1) of the SRA into plain English, it means that: (1) the SRA generally took effect beginning November 1, 1987; (2) the SRA applies *only* to offenses that took place on or after that date; and (3) by extension, as enacted, the SRA—including § 3582—doesn't apply to offenses like Coonan's that took place before that date.

This Court discussed the consequences of the SRA's November 1, 1987 effective date in *United States v. Argitakos*.   862 F.2d 423 (2d Cir. 1988).   In that case, two inmates had been serving prison terms for offenses they committed in 1982 and 1983 when they moved for a sentence reduction under 18 U.S.C.

---

[3]   The SRA carved out some exceptions, including deferring the effective date for the abolition of the Parole Commission and associated rights and procedures.   SRA § 235(b)(1), 98 Stat. at 2032. Congress has repeatedly extended those deferrals, so the pre-SRA framework for administering the parole system remains in place, though it is inapplicable to offenses committed after November 1, 1987.   *See* Part II.B, *below*.

§ 3582(c)(2), a subsection of § 3582 that allows courts to "reduce the term of imprisonment" for "a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." *Id.* at 424 (quoting § 3582(c)(2)). Without reaching the merits, the district court denied the inmates' motions because § 3582 did not apply given the date of the inmates' offenses. *Id.* at 424–25.

We affirmed, holding that § 3582(c)(2) "clearly does not apply to defendants' sentences" because it is a provision of the SRA, and the SRA itself says it "shall apply only to offenses committed after" its effective date of November 1, 1987. *Id.* at 425 (quoting the relevant 1987 amendment to the SRA). We explained that one "goal of the SRA [was] to bring about greater uniformity in sentences," and that, "[w]ithout parole, the way to ensure uniformity in sentences when sentence ranges are subsequently altered is to reduce the sentences of offenders who received the earlier, longer sentences." *Id.* But for prisoners sentenced before the SRA, and the Sentencing Guidelines, came into effect, "uniformity is to be achieved through the parole system." *Id.*

Though *Argitakos* concerned § 3582(c)(2), and this case concerns § 3582(c)(1), that distinction makes no difference. *See id.* at 424. Both subsections are part of the same section of the SRA, and both allow federal courts to reduce a term of

9

imprisonment that it had previously imposed. Our holding in *Argitakos* as to the limiting effect of the effective date in SRA § 235(a)(1) applies with equal force here.

And we reach this conclusion even though by its express terms § 3582(c)(1) as originally enacted applied to "any case." 18 U.S.C. § 3582(c)(1) (1984). "[W]e do not construe statutory phrases in isolation; we read statutes as a whole." *Springfield Hospital, Inc. v. Guzman*, 28 F.4th 403, 418 (2d Cir. 2022). "Interpretation of a phrase of uncertain reach is not confined to a single sentence when the text of the whole statute gives instruction as to its meaning." *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017). Section 3582 is just one subsection in a comprehensive overhaul of the federal statutes governing sentencing and incarceration. We see no indication in the language or history of the statute that the application of § 3582(c)(1) to "any case" was intended to override the limitation of the SRA's applicability to sentences for offenses committed after November 1, 1987. To the contrary, the statement that § 3582(c)(1) applies "in any case" makes sense as a means of distinguishing the applicability of that subsection from the next subsection, § 3582(c)(2), which applies to a more limited subset of cases—namely those in which the defendant was sentenced based on a sentencing range that has subsequently been lowered by the Sentencing Commission.

For the above reasons, § 3582(c)(1), as originally enacted, does not apply to Coonan's sentence.

**II.     First Step Act of 2018**

The next question is whether the First Step Act of 2018 changed that.   We think not.   The express terms of the FSA do not extend the applicability of § 3582 to Coonan, and we reject his contention that we should conclude otherwise based on Congress's intent in enacting the FSA.   Nor do we see ambiguity in the statute that would allow us to apply the canon of constitutional avoidance.   Below, we elaborate.

*A.  Statutory Text*

The FSA amended § 3582(c)(1) to allow defendants to request sentence reductions themselves rather than relying on the BOP to file sentence reduction motions on their behalf.   *See* FSA, Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).   In particular, the FSA amended the relevant portion of § 3582(c)(1) as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant [after exhausting administrative remedies]*, may reduce the term of imprisonment . . .

*Id.* (FSA addition in italics).

11

That amendment "made the first major changes to compassionate release since its beginnings in 1984" by removing "the BOP as the sole arbiter of compassionate release motions" and allowing individuals who are incarcerated to bring their own sentence reduction motions. *United States v. Brooker*, 976 F.3d 228, 233 (2d Cir. 2020). Before the FSA, the BOP held the exclusive power to file sentence reduction motions, and it "used this power sparingly, to say the least." *Id.* at 231. By giving inmates the procedural right to bring their own sentence reduction motions, the FSA has had "significant substantive consequences"— namely, a sharp increase in the number of sentence reduction motions brought by inmates and granted by federal courts. *Id.* at 233.

But nothing in the FSA amends SRA § 235(a)(1) or suggests that the SRA, as amended by the FSA, now applies to sentences for offenses committed *before* November 1, 1987. We interpret the statute's silence on this question to mean that Congress intended to leave § 235(a)(1) as it was, because "it can be strongly presumed that Congress will specifically address language on the statute books that it wishes to change." *Panjiva, Inc. v. U.S. Customs & Border Protection*, 975 F.3d 171, 180 (2d Cir. 2020); *see also Maine Community Health Options v. United States*, 590 U.S. 296, 315 (2020) (holding that a statute had continued effect "[b]ecause Congress did not expressly repeal" it when legislating on a related topic); *Epic*

12

*Systems Corporation v. Lewis*, 584 U.S. 497, 510 (2018) ("Congress will specifically address preexisting law when it wishes to suspend its normal operations in a later statute."). So the text of the FSA doesn't support Coonan's view that we can ignore § 235(a)(1), the effective date specified in the SRA.

We are not alone in this reasoning. Several other Courts of Appeals have reached the same conclusion. *See United States v. Rogge*, --- F.4th ----, No. 24-1678, 2025 WL 1718222, at *3 (8th Cir. June 20, 2025) ("We agree with our sister circuits that the FSA only amended the SRA as modified and thus did not alter its exclusion of offenses predating November 1, 1987."); *United States v. King*, 24 F.4th 1226, 1230 (9th Cir. 2022) ("[T]he FSA did not modify the transition language from 1984 and 1987 that limits the scope of § 3582(c)(1) to inmates who committed their crimes on or after November 1, 1987."); *United States v. Jackson*, 991 F.3d 851, 853 (7th Cir. 2021) ("Doubtless the Congress that enacted the [First Step] Act wanted to make compassionate release easier. But it did not modify the transition language from 1984 and 1987.").[4]

_____

[4] Several circuits, including this Court, have also reached the same conclusion in unpublished opinions or nonprecedential orders. *See United States v. Toney*, No. 24-2636, 2024 WL 4648075, at *1 (3d Cir. Nov. 1, 2024) (holding post-FSA that "pre-SRA defendants . . . are governed not by

13

### B. *Legislative Intent and History*

"Generally speaking, we need proceed no further than the statute's text and context in the broader statutory scheme." *United States v. Epskamp*, 832 F.3d 154, 162 (2d Cir. 2016). Thus, our assessment of the text of the SRA and FSA is dispositive. Nevertheless, we briefly explain why we are not persuaded by Coonan's contention that our reading of the statute is inconsistent with Congress's intent in passing the FSA.

Coonan says that "Congress's intent in passing the First Step Act was to permit inmates to directly move for compassionate release," and that it would frustrate Congress's intent for us to "discriminate" against inmates whose offenses occurred before November 1, 1987. Coonan Br. at 16; *see also id.* at 15–20. Even if Coonan were right that allowing him relief under § 3582(c)(1) would be consistent with a broad policy goal of making sentence reduction motions more accessible to federal inmates, "no legislation pursues its purposes at all costs." *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987). "Deciding what competing

_____

§ 3582(c), but rather by former 18 U.S.C. § 4205(g)"); *United States v. Borelli*, No. 21-1506, 2022 WL 6831650, at *1 (2d Cir. Oct. 12, 2022) (holding that "Section 3582(c)(1)(A) . . . applies only to persons whose offenses occurred on or after November 1, 1987"); *United States v. Rivera-Rios*, No. 21-1773, 2022 WL 14206094, at *2 (2d Cir. Oct. 25, 2022) (holding that the FSA "did not expand eligibility for § 3582(c)(1)(A) relief to inmates serving sentences for offenses predating November 1, 1987"); *United States v. Erwin*, No. 20-10795, 2021 WL 4805507, at *1 (5th Cir. Oct. 14, 2021) (affirming a district court that "observed that § 3582(c) does not apply to Erwin, who committed his offenses before the statute's effective date").

values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." *Id*. at 526.

As described more fully below, Congress chose to leave in place the sentencing system that applied before the SRA, giving that Act only prospective application, except for limited explicit exceptions. Thus, we are not persuaded by Coonan's claim that Congress's general purpose of ameliorating sentences should be read in a way that would frustrate the careful sentencing-reduction structure Congress has established over several decades. And in any event, the Supreme Court has cautioned us that such "policy arguments cannot supersede the clear statutory text." *Universal Health Services, Inc. v. United States*, 579 U.S. 176, 192 (2016). Because we can't reconcile Coonan's view of congressional intent with the words of the laws that Congress has actually passed, we decline to adopt Coonan's view here.

In a similar vein, Coonan points to proposed legislation that would "clarify[] that federal prisoners sentenced before November 1, 1987[,] are eligible for compassionate release" as evidence of Congress's intent to extend the benefits of the FSA's amendment to the SRA to *all* incarcerated individuals. Coonan Br. at

15

17 (citing a news release from Senator Grassley regarding S. 1248, 118th Congress (2023)). We reject Coonan's argument for three reasons.

*First*, Coonan's argument would turn our approach to statutory interpretation on its head. Courts focus on the text of Congress's enactments because "the best evidence of Congress's intent is the statutory text." *Grajales v. Commissioner of Internal Revenue*, 47 F.4th 58, 62 (2d Cir. 2022). "[C]lear evidence of congressional intent may illuminate ambiguous text," but we should not "allow[] ambiguous legislative history to muddy clear statutory language." *Milner v. Department of Navy*, 562 U.S. 562, 572 (2011).

*Second*, we have no way to determine whether the proposed legislation enjoys majority support in Congress, or whether it hasn't passed because a majority of members of Congress *don't* support it. That's why "[s]ubsequent legislative history is a hazardous basis for inferring the intent of an earlier Congress," especially "where, as here, the proposals do not become law." *State of New York v. Department of Justice*, 951 F.3d 84, 110 (2d Cir. 2020); *see also Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Engineers*, 531 U.S. 159, 169–70 (2001) ("Failed legislative proposals are a particularly dangerous ground on which to rest an interpretation of a prior statute.").

And *third*, Coonan does not grapple with evidence that Congress has tacitly and repeatedly *approved* distinguishing cases based on conduct that occurred before November 1, 1987, from those based on conduct that occurred on or after that date.

This point requires some historical background. When it enacted the SRA, Congress also repealed the then-effective Parole Commission and Reorganization Act ("PCRA") with the intent of eventually abolishing the United States Parole Commission. SRA § 218(a)(5), 98 Stat. at 2027 (repealing PCRA, Pub. L. No. 94-233, ch. 311, 90 Stat. 219 (1976), *formerly codified at* 18 U.S.C. §§ 4201–4218).

In the SRA, Congress kept the PCRA alive for inmates already sentenced under the prior system for five years, while applying the SRA to new cases that arose after the SRA's effective date, thereby creating a two-track scheme. *See* SRA, § 235(b)(1), 98 Stat. at 2032, *as amended by* § 2(b)(1), 101 Stat. at 1266 (providing that the PCRA "shall remain in effect for five years after the effective date as to an individual who committed an offense . . . before the effective date"); *see also King*, 24 F.4th at 1229 ("The literal language of the pertinent statutes' text left this dual-regime structure in place for five years."). Congress has extended the five-year delay period repeatedly (and as recently as this year), effectively keeping the PCRA alive indefinitely. *See, e.g.*, Judicial Improvements Act of 1990, Pub. L. 101-

650, tit. III, § 316, 104 Stat. 5089, 5115 (1990) (extending the delayed repeal of the parole statutes to ten years after the date of enactment); Full-Year Continuing Appropriations and Extensions Act, Pub. L. 119-4, § 1115, 139 Stat. 9, 15 (2025) (extending the delayed repeal of the parole statutes to thirty-seven years and 355 days—or, in other words, to October 22, 2025); *see also King*, 24 F.4th at 1229 ("[T]his structure by renewals has since acquired a state of permanent impermanence.").

By periodically extending the PCRA's effect, Congress has maintained and implicitly endorsed the two-track sentencing system that distinguishes sentences for crimes committed before November 1, 1987, from sentences for those committed thereafter. It's necessary to keep the PCRA and the Parole Commission alive for offenses committed before November 1, 1987, precisely because the SRA "shall apply *only* to offenses committed after" the SRA took effect on November 1, 1987. SRA § 235(a)(1), *as amended by* § 4, 99 Stat. at 1728 *and* § 2(a), 101 Stat. at 1266 (emphasis added). In the face of this history, we cannot infer an unspoken congressional intent to expand the reach of the SRA. Congress has kept in place the opportunity to seek parole from the Parole Commission for individuals in Coonan's position.

*C. Constitutional Avoidance*

Finally, Coonan argues on appeal that interpreting the FSA to apply only to inmates convicted of conduct occurring on or after November 1, 1987, would violate equal protection principles of the Fifth Amendment by discriminating against inmates on the basis of age. He invokes the doctrine of constitutional avoidance, under which we consider the constitutional implications of our decisions "when deciding which of two plausible statutory constructions to adopt." *Clark v. Martinez*, 543 U.S. 371, 380 (2005). That is, "[i]f one [interpretation] would raise a multitude of constitutional problems, the other should prevail—whether or not those constitutional problems pertain to the particular litigant before the Court." *Id.* at 380–81.

We don't consider constitutional avoidance here because there is only one plausible interpretation of the SRA: that it applies "only to offenses committed after [November 1, 1987]." SRA § 235(a)(1), *as amended by* § 4, 99 Stat. at 1728 *and* § 2(a), 101 Stat. at 1266. "The canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction; and the canon functions as a means of choosing between them." *Clark*, 543 U.S. at 385 (emphasis omitted). An interpretive canon like constitutional avoidance has "no application where, as

in this case, traditional rules of construction permit us to conclude that there is no ambiguity in the statute." *Spina v. Department of Homeland Security*, 470 F.3d 116, 130 (2d Cir. 2006).

## CONCLUSION

For these reasons, we **AFFIRM** the order of the district court.